[No. A079271. First Dist., Div. Two. June 8, 1998.]

KAREN GATTON et al., Plaintiffs and Appellants, v.
A.P. GREEN SERVICES, INC., Defendant and Respondent.

**COUNSEL**

Daniel U. Smith, Ted W. Pelletier, Wartnick, Chaber, Harowitz, Smith & Tigerman, Harry F. Wartnick, Madeline J. Chaber and Cheryl L. White for Plaintiffs and Appellants.

Lynch, Gilardi & Grummer, Duane W. Grummer and Robert V. Betette for Defendant and Respondent.

## OPINION

**LAMBDEN, J.**—Plaintiffs in this wrongful death action are the widow and heirs of decedent Jerald A. Gatton (Gatton), who died in April 1995 from mesothelioma caused by occupational exposure to asbestos. Plaintiffs sued various companies, including A.P. Green Services, Inc. (Green), an engineering and contracting firm known as Bigelow-Liptak Corporation (Bigelow-Liptak) until it ceased doing business in 1989. This is plaintiffs' appeal from a judgment in favor of Green after summary judgment. The key question presented is: Was there a triable issue that Bigelow-Liptak caused Gatton's exposure to asbestos? We will agree with the trial court's "no" answer and, rejecting language in *Williams* v. *Saga Enterprises, Inc.* (1990) 225 Cal.App.3d 142 [274 Cal.Rptr. 901], affirm without reaching other issues.

### BACKGROUND

The complaint alleges, as against Green, negligence, strict liability, enterprise liability and false representation, but there is no need to distinguish between the theories. The summary judgment motion placed at issue the common factual element of whether alleged asbestos exposure during Gatton's work beginning in 1980 at the Pinole Point Steel Company galvanizing plant (Pinole Point) in Richmond was caused by Green. The motion, noticed after discovery and 20 months after the complaint's filing, urged that there was no such connection.

In opposition to the motion, plaintiffs offered excerpts from two depositions. One was from Henry Woodrow, taken in 1986 as part of discovery in Woodrow's personal injury action against Johns-Manville Corporation and others. Plaintiffs here represented that Woodrow had worked for Bigelow-Liptak from 1963 to 1977, and their excerpt consisted of two pages in which he described work he had done at a "galvanizing plant" at Point Pinole. He said he could not recall the name of the plant, only that it was the subsidiary of a shipyard in San Francisco. He had done boiler work for some six days, "[t]earing out and installing," and had handled "block insulation" and "wet and dry asbestos." He said "Yes" when asked if those materials were "manufactured by A.P. Green[.]" In its reply, Green objected to the deposition as hearsay inadmissible under Evidence Code section 1292 because Bigelow-Liptak had not been a party and because no party had an interest and motive similar to its own. Plaintiffs did not show Woodrow was unavailable; in fact, they conceded at the hearing that he was alive.

The other excerpt was from a deposition Gatton gave in late 1994, also not in this case but in his own personal injury action—one which, according to

the pleadings, produced a jury verdict in his favor and against Owens-Corning Fiberglas Corporation and American Honda Motor Company, Inc., just weeks before he died. Bigelow-Liptak had not been a party to that suit either, and so Green objected to the deposition as well, based on hearsay and lack of any party's similar interest and motive.

Gatton's deposition did not refer to Green or Bigelow-Liptak but recounted his work generally at Pinole Point from 1980 through 1990. He had begun as a laborer and worker at the 250,000-square-foot facility housing the galvanizing line, but he quickly moved on to qualifier, off-site project administrator and, finally, outside salesman before leaving the company. The plant had a galvanizing furnace five stories tall, an "open fire furnace" fifty feet high, and two boilers located in their own room adjacent to the production plant. During his eight months as a qualifier, Gatton would sometimes have to open the top or bottom of the galvanizing furnace in order to retrieve broken strips of the steel being fed through it. This stirred up dust and debris which he felt was partially asbestos. Gatton did not mention working on or around either of the boilers.

Green objected to unsupported statements in plaintiffs' opposition that Kaiser Aluminum and Chemical Company had rebranded a wet refractory product for Green as "Green P.C.O.," in the 1970's and 1980's, and that Woodrow had installed such products at Pinole Point. Green also attached to its reply brief answers by A.P. Green Refractories Co. to interrogatories showing that the latter—as opposed to A.P. Green *Services*, Inc.—had once sold a product called "Green PC."

The court granted Green's motion for summary judgment (Code Civ. Proc., § 437c (hereafter § 437c)), finding no triable issue of fact regarding exposure to any products or activities of Green.

## DISCUSSION

A motion for summary judgment must be granted if all of the papers submitted show "there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law. In determining whether the papers show . . . there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, . . . and all inferences reasonably deducible from the evidence . . . ." (§ 437c, subd. (c).) A defendant has met its burden of showing a cause of action has no merit if it "has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the

plaintiff . . . to show . . . a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials of its pleading to show . . . a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (*Id.*, subd. (o)(2); *Parsons* v. *Crown Disposal Co.* (1997) 15 Cal.4th 456, 464 & fn. 4 [63 Cal.Rptr.2d 291, 936 P.2d 70].)

■ Summary judgment contemplates the use of deposition transcripts (§ 437c, subd. (b); *Villa* v. *McFerren* (1995) 35 Cal.App.4th 733, 749 [41 Cal.Rptr.2d 719]) subject, however, to admissibility objections made and sustained by the court (§ 437c, subd. (c)). Green objected to the Woodrow deposition transcript as inadmissible hearsay, and the court implicitly sustained the objection. ■ We independently review the deposition's admissibility (*Biljac Associates* v. *First Interstate Bank* (1990) 218 Cal.App.3d 1410, 1419-1420 [267 Cal.Rptr. 819]) and the legal effect of facts properly presented (*Parsons* v. *Crown Disposal Co., supra,* 15 Cal.4th 456, 464).

■ Evidence Code section 1292, subdivision (a), governing former testimony from another case, provides: "Evidence of former testimony is not made inadmissible by the hearsay rule if:

"(1) The declarant is unavailable as a witness;

"(2) The former testimony is offered in a civil action; and

"(3) The issue is such that the party to the action or proceeding in which the former testimony was given had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which the party against whom the testimony is offered has at the hearing."

The motion revealed two obstacles to admitting Woodrow's deposition. First, he was not unavailable. This was conceded and was a sufficient ground alone for exclusion.

Second, it was not shown that any party in Woodrow's personal injury action had an interest and motive similar to Green's. It is not enough, as plaintiffs argue, that all asbestos defendants would have a shared interest and motive of establishing that Gatton was not exposed to asbestos at Pinole Point. Rather, similarity of interest and motive must be determined *on practical considerations*, not merely the similar position of the parties in the two cases. (*Wahlgren* v. *Coleco Industries, Inc.* (1984) 151 Cal.App.3d 543, 546 [198 Cal.Rptr. 715] (*Wahlgren*) [concerning parallel requirement in

Evidence Code section 1291].) As the court below observed at the hearing, the defendants in Woodrow's case would have had little or no interest in defending against the presence of materials furnished or installed by Green: "If anything, they want to point fingers at A.P. Green Services in order to avoid their own liability. Particularly in a case where Mr. Woodrow's . . . prospects of recovery from A.P. Green[, as his employer], are limited to the Workers' Compensation [remedy]." Lack of similar interest and motive between the defendants there and Green in this case was thus a second, independently sufficient, basis for ruling the evidence inadmissible. (Cf. *Wahlgren, supra,* 151 Cal.App.3d 543, 547.)

The proponent of hearsay evidence bears the burden of showing it falls within a hearsay exception (*People* v. *Woodell* (1998) 17 Cal.4th 448, 464 [71 Cal.Rptr.2d 241, 950 P.2d 85]), and the record here fails to satisfy either the unavailability or interest-and-motive requirement of Evidence Code section 1291, subdivision (a).

Plaintiffs would have us overlook both defects by treating Woodrow's deposition testimony as a declaration. They cite *Williams* v. *Saga Enterprises, Inc., supra,* 225 Cal.App.3d 142 (*Williams*), as authority for this proposition, not having cited it below. The plaintiff in *Williams* sued a restaurant over injuries allegedly sustained in a collision with a driver who had left the restaurant drunk. In resisting summary judgment, the plaintiff sought to take the case out of statutory immunity for purveyors of alcohol (Civ. Code, § 1714) by showing an undertaking by the restaurant. He offered transcript testimony, from a criminal prosecution of the driver, in which a night manager, Bob Nolan, testified that the driver customarily gave his car keys to the bartender, who would hold them as a friend whenever he came in. (*Williams, supra,* at pp. 145-146, 148-150.)

On the motion, the restaurant had opposed use of the transcript in "a shotgun approach," stating with "no discussion and points and authorities" that it was not complete, not properly authenticated or documented, was without foundation, was hearsay, contained improper opinions and conclusions, and was not the original. (*Williams, supra,* 225 Cal.App.3d at p. 149.) The Court of Appeal went through that laundry list and briefly rejected each ground, although apparently, as in the lower court, with little or no briefing from the restaurant. As to hearsay, the opinion stated: "While the reporter's transcript is from another case, the effect of the examination made of Mr. Nolan is the same as would be a declaration supplied by him in this case. Nolan was asked questions under oath and he answered them. Saga does not explain why statements made by Nolan in the criminal trial should not be used here. Plaintiff does not seek to use the transcript to collaterally estop

Saga from presenting any defenses or facts at a trial of this case; plaintiff simply seeks to raise a triable issue of material fact with respect to a duty of care which he contends Saga owed to him, and thereby defeat Saga's motion for summary judgment." (*Ibid.*, fn. omitted.) The court added in footnote: "Such testimony could not be received in this case over a hearsay objection on the ground that it is admissible under the 'former testimony' exception. Under Evidence Code section 1292, subdivision (a), it is required that the declarant (i.e., Mr. Nolan) be unavailable as a witness. No such showing is made here. However, inasmuch as the recorded testimony was offered in support of the opposition to a summary judgment motion and serves effectively as a declaration by Mr. Nolan, we treat it here as such." (*Ibid.*, fn. 3.)

We cannot abide *Williams*'s disregard of the statute. Summary judgment is based on all of the evidence set forth in the papers "except that to which objections have been made and sustained" (§ 437c, subd. (c)). The statute does also direct that "[e]videntiary objections not made at the hearing shall be deemed waived" (*id.*, subd. (b)), and it would appear from the opinion that the restaurant's lack of authority or argument may have constituted a waiver justifying use of the trial transcript for motion purposes, or that failure to pursue the arguments with proper briefing on appeal was also a waiver. (*Biljac Associates* v. *First Interstate Bank, supra,* 218 Cal.App.3d 1410, 1422.) But these were not the reasons given in *Williams,* and for *Williams* to suggest that a proper objection would have been meritless simply guts the summary judgment statute and the Evidence Code. No case of which we are aware has ever cited *Williams* for that proposition.

Also unpersuasive is *Williams*'s casual view of trial testimony from another trial and declarations on summary judgment as being "the same . . . ." (*Williams, supra,* 225 Cal.App.3d 142, 149.) Our Legislature has given this careful consideration and decided otherwise, mandating both unavailability, to ensure necessity, and a similar interest and motive in the prior proceeding, to ensure fairness. (Evid. Code, § 1292, subd. (a).) *Williams* pays no attention at all to the similarity requirement, and it is hard to see how the prosecution or the defendant driver in the criminal trial would have been motivated to look after the restaurant's civil liability interests.

The problem is even more pronounced here, where the former testimony is not from another trial but from a deposition. "[I]t should be noted that a deposition hearing normally functions as a discovery device. . . . [G]iven the hearing's limited purpose and utility, examination of one's own client is to be avoided. At best, such examination may clarify issues which could later be clarified without prejudice. At worst, it may unnecessarily reveal a weakness in a case or prematurely disclose a defense. [¶] In contrast, a trial

serves to resolve any issues of liability. Accordingly, the interest and motive in cross-examination increases dramatically. Properly exercised, this right serves to clarify a litigant's position and may result in his or her complete exoneration. . . ." (*Wahlgren, supra,* 151 Cal.App.3d at pp. 546-547.) A deposition from another case differs greatly from a declaration from the same witness saying that, if called to trial in the current case, the witness would testify in a particular manner on specified subjects.

Plaintiffs offer this rationale in support of the *Williams* result: Starting with the premise that the summary judgment statute authorizes the use of not only depositions but "affidavits" as well (§ 437c, subd. (b)), they note that 1872 provisions defining modes of taking testimony define "deposition" as "a written declaration, under oath, made upon notice to the adverse party . . ." (Code Civ. Proc., § 2004) and "affidavit" as "a written declaration under oath, made without notice to the adverse party" (*id.,* § 2003). Since the only difference is notice, a protection present for a deposition, they urge that there is no reason to treat deposition testimony as anything less trustworthy than an affidavit. The requirements of unavailability and a similar interest and motive (Evid. Code, § 1292, subd. (a)) can, they assert, be avoided simply by offering a deposition from another case as an "affidavit," and the summary judgment statute will be satisfied. They also observe that an affidavit is a form of evidence inadmissible at trial yet expressly contemplated for summary judgment.

We reject their reasoning. Summary judgment does allow a use of affidavits (§ 437c, subd. (b)) while trial ordinarily would not (*Windigo Mills* v. *Unemployment Ins. Appeals Bd.* (1979) 92 Cal.App.3d 586, 597 [155 Cal.Rptr. 63]). However, we have already explained the practical distinctions between affidavits and depositions and that the Evidence Code has erected a barrier of similar interest and motive as an added protection for the litigant who is confronted with deposition testimony taken by other parties in another action. Notice in a deposition reflects the opportunity for the *original* parties to utilize that protection and underscores the need for the Evidence Code barrier. But more importantly, plaintiffs gloss over the differences between depositions involving the same parties (usually in the same case) and those involving other parties. *Williams* seems to make the same mistake.

Cases frequently speak of deposition testimony being an adequate substitute for an affidavit (*Leasman* v. *Beech Aircraft Corp.* (1975) 48 Cal.App.3d 376, 380 [121 Cal.Rptr. 768]; *Estate of Kerner* (1969) 275 Cal.App.2d 785, 789 [80 Cal.Rptr. 289]; *Truslow* v. *Woodruff* (1967) 252 Cal.App.2d 158, 164 [60 Cal.Rptr. 304]; *Saporta* v. *Barbagelata* (1963) 220 Cal.App.2d 463, 469 [33 Cal.Rptr. 661]; *Kramer* v. *Barnes* (1963) 212 Cal.App.2d 440, 444

[27 Cal.Rptr. 895]; *Jacobs* v. *Medford* (1962) 210 Cal.App.2d 164, 167 [26 Cal.Rptr. 591]; *Nizuk* v. *Gorges* (1960) 180 Cal.App.2d 699, 709 [4 Cal.Rptr. 565]; cf. *Desny* v. *Wilder* (1956) 46 Cal.2d 715, 725 [299 P.2d 257]), but always in the context of depositions filed in the same action and involving, of course, the same parties (*ibid.*). Division One of this district articulated the rationale decades ago, citing the discovery statutes: "In this regard it should be noted that since a deposition is given under oath [citation] and filed in the proceedings [citation] for use as evidence in the action . . . , it may be used in a summary judgment proceeding without the necessity of a showing by the affiant that if sworn as a witness he can testify competently to the evidentiary facts contained in the deposition. [Citations.]" (*Estate of Kerner, supra,* 275 Cal.App.2d at p. 789; see now Code Civ. Proc., § 2025.) ■ It has long been held that for an affidavit to meet summary judgment standards, the affiant must show that if sworn as a witness he or she can testify competently to the evidentiary facts contained in the affidavit. (*Estate of Nelson* (1964) 227 Cal.App.2d 42, 46 [38 Cal.Rptr. 459].)

■ A deposition from another case does not provide such assurance and is not readily subject to use in the action. Subdivisions (a) of Evidence Code sections 1291 and 1292 require unavailability and more before depositions can be admitted at a trial, and there are questions whether the witness, even if alive, can testify competently to the deposition's contents. Memories fade, especially with a deposition like the one here, which was 10 years old, and the excerpt may also fail to show, again as here, whether the witness ever signed the transcript. In our record, we also have only a representation by counsel that the witness Woodrow was "still alive," not that he was well enough or willing to testify.

*Williams* highlights the pernicious effect of footnotes. As we have noted before, they often escape the most careful attention of their authors and are overlooked by editors. Like land mines, they can lie buried for years until stumbled upon. *Williams*'s footnote 3 is such a trap. Its other-case-deposition-as-affidavit comment never garnered a headnote and has remained uncited in the published cases.

We anticipate that plaintiffs in this case may argue on petition for rehearing that our abrogation of that holding should be given only prospective effect, but this would be unwarranted. ■ Retrospective operation is the usual rule for judicial opinions (*Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 24 [44 Cal.Rptr.2d 370, 900 P.2d 619]), and *Williams* is a single, abberant and unnoticed decision, not a well-rooted line of authority on which litigants could have placed reasonable reliance. (See, e.g., *People* v. *Welch* (1993) 5 Cal.4th 228, 237-238 [19 Cal.Rptr.2d 520, 851 P.2d 802].) The record does not show that plaintiffs even cited *Williams* below.

██ We reject *Williams* and uphold the implied ruling of the court below that the Woodrow deposition was inadmissible under Evidence Code section 1292, subdivision (a). Because this was the only proffered evidence linking asbestos at Pinole Point to any act by Green or its predecessor Bigelow-Liptak, there is no need to discuss other issues or the *Gatton* deposition.

## DISPOSITION

The judgment is affirmed.

Haerle, Acting P. J., and Ruvolo, J., concurred.

A petition for a rehearing was denied July 1, 1998, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied September 16, 1998. Chin, J., was of the opinion that the petition should be granted.