Filed 7/29/16  Shermoen v. First Allied Securities CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| STEPHEN R. SHERMOEN, SR., Individually and as Trustee, etc. et al., Plaintiffs and Appellants, v. FIRST ALLIED SECURITIES, INC. et al., Defendants and Respondents. | D067612 (Super. Ct. No. 37-2013-00058215-CU-SL-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Joel M. Pressman, Judge.  Affirmed.

Mirch Law Firm, Kevin J. Mirch, Marie C. Mirch and Erin E. Hanson for Plaintiffs and Appellants.

Kirby Noonan Lance & Hoge, Michael L. Kirby, Ryan S. Kirby; Kirby & Kirby, Michael L. Kirby and Ryan S. Kirby for Defendants and Respondents.

After their investments dropped in value, plaintiffs Stephen Shermoen, Sr., and Nancy Shermoen sued Advanced Equities, Inc. (AEI), First Allied Securities, Inc.

(FASI), Adam Antoniades (FASI's CEO), and other individuals and entities for misrepresentations and omissions, fiduciary breach, and securities law violations.[1] FASI and Antoniades (herein, defendants) successfully moved for summary judgment on plaintiffs' second amended complaint (SAC).

On appeal, plaintiffs argue defendants failed to meet their burden on summary judgment because the evidence they proffered was inadmissible and insufficient. They also claim that even if defendants met their burden, plaintiffs offered competent evidence demonstrating a triable issue as to each cause of action.

We affirm the judgment. Defendants met their burden to show, and plaintiffs failed to rebut, the lack of a triable issue of material fact as to each of the causes of action against them. Plaintiffs made their investments through AEI and their AEI broker, Jared Slater, not FASI. Defendants proffered uncontroverted evidence they never made representations to plaintiffs, through Slater or otherwise, and that at all relevant times, AEI and FASI operated as completely independent companies.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Plaintiffs' Investment and Lawsuit*

Plaintiffs held a brokerage account with AEI, a firm that specialized in investments in the "clean tech" sector. AEI funded Silicon Valley start-up companies

---

[1]    Plaintiff Stephen Shermoen, Sr. (herein, Shermoen), sued in his individual capacity and as trustee of the Shermoen Sr. Revocable Family Trust Dated August 23, 1999 (Trust). As described below, Shermoen submitted a declaration and deposition transcript in response to the summary judgment motion filed by FASI and Antoniades. Plaintiff Nancy Shermoen sued in her capacity as trustee of the Trust but did not submit a declaration or other evidence.

through private placements (nonstock transactions). AEI created investment products to fund the start-up companies, including AEI 2010 Clean Tech Ventures II, LLC and AEI Wireless II, LLC. AEI was a subsidiary of Advanced Equities Financial Corporation (AEFC). AEFC also owned FASI, another brokerage firm.

In 2010, plaintiffs, as trustees of the Trust, invested approximately $56,604 in AEI 2010 Clean Tech Ventures II, LLC through their AEI broker, Jared Slater. AEI 2010 Clean Tech Ventures II, LLC purchased convertible preferred shares of Fisker Automotive, Inc., Serious Energy Inc., and Bloom Energy Corp., three late-stage start-up companies. In 2010, on Slater's advice, Shermoen invested his retirement account containing $49,876 in AEI Wireless II, LLC. AEI Wireless II, LLC purchased preferred shares of Motricity, Inc. In 2011, Plaintiff Shermoen wanted to move his retirement account. He was unable to reach anyone at AEI to execute the transaction and later learned AEI had closed.

Plaintiffs filed suit in July 2013. Their SAC, filed in February 2014, alleged common law fraud and statutory claims against AEI, FASI, Bloom Energy Corp., AEI Clean Tech Ventures II, LLC, AEI Wireless II, LLC, and three officers and directors of AEFC: Dwight Badger, Keith Daubenspeck, and Antoniades.[2] As to FASI and Antoniades, the SAC asserted intentional and negligent misrepresentations and omissions, fraud and deceit, and constructive fraud. It also asserted failure to supervise

---

[2] The original complaint also asserted claims against Fisker Automotive, Inc., Motricity, Inc., and Serious Energy, Inc. Neither the original complaint nor the SAC alleged claims against the corporate parent, AEFC, or against AEI broker, Jared Slater.

3

against Antoniades and fiduciary breach and secondary securities liability (Corp. Code, §§ 25504, 25504.1) against FASI.[3]

In essence, plaintiffs claimed defendants misrepresented or failed to relay the risks of the investment offerings to brokers like Slater. For example, plaintiffs claimed they were told their Fisker shares would have liquidation preference and antidilution protection when in actuality they would lose those rights if they did not participate in Fisker's capital calls. They alleged AEFC officer Dwight Badger misstated facts about Bloom Energy's finances, which Antoniades and Daubenspeck failed to correct. Likewise, they claimed defendants misrepresented that Motricity was a sufficiently safe investment for a retirement account. Sales materials allegedly touted the risky private placements as "late stage equities" that were 12-36 months from an initial public offering and provided "higher near term investment returns" compared to public equity markets, with "greater short-term liquidity and lower risk profiles."

Plaintiffs alleged Antoniades made misrepresentations and omissions about AEI products to AEI and FASI brokers during training seminars, which were then conveyed to

---

[3] Corporations Code sections 25504 and 25504.1 are part of the Corporate Securities Law of 1968, also referred to as California's Blue Sky law (Corp. Code, § 25000 et seq.). The Blue Sky law enumerates several prohibited practices and establishes civil liability for persons who misrepresent or omit material facts in connection with the purchase or sale of securities. (Corp. Code, § 25501.) "The liability created by section 25501 is sometimes referred to as primary or direct because it applies to a person who is directly or primarily responsible" for a securities fraud violation. (*AREI II Cases* (2013) 216 Cal.App.4th 1004, 1013.) The Blue Sky law also establishes secondary liability for those who assist in the primary violation. (*Ibid.*; Corp. Code, §§ 25504, 25504.1.) The SAC asserted primary and secondary violations by AEI entities and secondary violations by FASI.

plaintiffs. They alleged that in 2007, Antoniades held a training seminar where he told AEI and FASI brokers that the start-up companies targeted for investment were going public, had extensive interest in initial public offerings, and were viable companies operating well above their investment value.[4] Plaintiffs further alleged Antoniades misrepresented to AEI and FASI brokers during sales meetings, presentations, and in-person calls that investors like plaintiffs would have the benefit of antidilution protection if the companies did not meet their capital calls. Plaintiffs claimed Antoniades developed sales materials for AEI and encouraged the aggressive sale of AEI investments to investors.

The SAC alleged these representations about the start-ups were false and their investments were nearly worthless. For example, although plaintiffs were allegedly told Fisker had "fantastic" prospects, those statements were untrue, and Fisker filed for Chapter 11 bankruptcy protection in November 2013. Plaintiffs claimed "Private Equity was being sold to 'unqualified investors' by using fraudulent representations and/or concealing facts which were necessary for any investor to make a knowing decision whether or not to invest in the products and the risk associated with private equity." Plaintiffs claimed to be individual investors who could not afford to invest their retirement plans in risky securities and stated the investments made were unsuitable and contrary to their investment goals.

---

[4] The SAC does not clarify whether Antoniades was referring to a general investment philosophy or instead to the particular start-up companies plaintiffs invested in through AEI 2010 Clean Tech Ventures II, LLC and AEI Wireless II, LLC.

Plaintiffs alleged AEI and FASI failed to conduct adequate due diligence. They alleged brokers sold AEI products "without considering basic, but essential securities requirements such as suitability, investment objectives, liquidity, etc." Plaintiffs contended that as part of the sales process, brokers told investors AEI products had been vetted by FASI and were safe investments, even for retirement accounts.

At the time plaintiffs made their investments in 2010, Antoniades served as CEO of FASI. Plaintiffs claimed Antoniades simultaneously served as constructive president of AEI and that AEI and FASI disregarded corporate formalities. As an example of AEI and FASI's intertwined relationship, plaintiffs alleged that in 2008, Antoniades, as President of AEI, terminated FASI's CEO and President, Keith Gregg, after Gregg tried to curb unethical sales practices. Plaintiffs alleged AEI and FASI shared office space and employees and were used interchangeably to sell AEI's proprietary investment products.

Plaintiffs alleged they were not advised their investments were worthless. They received periodic statements that showed their investments at cost instead of value. As a result, they mistakenly believed their investments had retained their original purchase value, unaware that the actual value of the investments had plummeted.

## B. *Defendants' Motion for Summary Judgment*

On September 26, 2014, defendants moved for summary judgment or summary adjudication. Defendants argued FASI and AEI were completely independent broker-dealers that merely shared a parent. They argued plaintiffs never opened an account with FASI or had any form of oral or written communications with FASI or Antoniades, through Slater or otherwise.

In support of their motion, defendants submitted a declaration by Antoniades and excerpts of his deposition transcript. Antoniades declared he had never met plaintiffs; never communicated with plaintiffs; never communicated with or supervised Slater; never trained Slater or told him what he should say to plaintiffs about their investments; never pushed investments in AEI products; and never developed sales materials for AEI products. Antoniades declared Slater had never been a registered broker with FASI; instead, he was employed with AEI, which had "always been a completely separate broker-dealer" under the FINRA and SEC rules and regulations. AEI had its own leadership team, capital, policies and procedures, real estate holdings, compliance department, chief compliance officer, advertising department, accounting department, and bank accounts. It had a separate corporate office in Chicago, Illinois. Antoniades declared he had never managed or controlled AEI. Instead, he was hired as president of AEFC to be the business leader of FASI. In this capacity, he had no oversight or involvement in AEI's creation of investment products. FASI employed its own supervisors and compliance officers, had its own policies and procedures, its own capital, and its own audit number.

7

Antoniades's declaration authenticated and attached an excerpt from the transcript of his September 10, 2014 deposition in this case. The transcript was not signed by a certified shorthand reporter. At his deposition, Antoniades testified AEI was a "completely separate broker dealer" that "had its own leadership team, its own capital, its own policies and brokers, its own real estate, its own everything." AEFC and FASI shared corporate offices in San Diego, while AEI had a separate office in Chicago. Antoniades had served as president of AEFC since 2007 and was the business leader of AEFC's independent brokerage channel, FASI. Antoniades explained at the deposition that while FASI brokers also sold AEI products to their clients, these sales would be subject to internal supervision by FASI's officers and compliance team. Likewise, AEI brokers who sold AEI products to AEI clients were supervised internally at AEI. As he had in his declaration, Antoniades rejected at deposition that FASI ever did due diligence *for* AEI.

Defendants filed a request for judicial notice, attaching FINRA records and reports for Slater and AEI, a press release, and an AEI organization chart. They filed a separate statement of undisputed material facts, citing Antoniades's declaration and deposition testimony.

### C. *Plaintiffs' Opposition and Defendants' Reply*

Plaintiffs filed their opposition to defendants' motion on November 26, 2014. They made evidentiary objections to defendants' request for judicial notice, claiming the exhibits were not authenticated, lacked foundation, and were inadmissible hearsay.

8

Plaintiffs objected to Antoniades's declaration, arguing it was not based on personal knowledge, and the deposition transcript, arguing it was not properly authenticated.

Plaintiffs offered nine exhibits (A through I) in support of their opposition, authenticated through three declarations. Marie Mirch, an attorney for plaintiffs who previously served as counsel for Keith Gregg in a FINRA arbitration against FASI, filed a declaration introducing documents from that proceeding (Exhibits A through F) (the Mirch Declaration).[5] Shermoen submitted a declaration authenticating documents he received from AEI broker Jared Slater (Exhibits G and H).[6] Erin Hanson, an attorney for

---

[5] Exhibit A was an AEFC form indicating that AEFC and its "affiliates" shared an employee handbook. Exhibit B was a 2008 e-mail from Keith Gregg stating the company was undergoing corporate reorganization. Exhibit C was a 2008 memorandum from Antoniades, as president of AEFC, to FASI and AEI staff. Antoniades wrote that Gregg would become an executive vice-president of Advanced Equities Wealth Management (AEWM) and "oversee the sales and marketing of AEWM products and services delivered to [AEI], [FASI], and associated affiliates." The memorandum stated that Antoniades had assumed the role of president and CEO of FASI and looked forward to pursuing "our shared goals of growing our businesses." Exhibit D was a 2008 memorandum from Antoniades, as president of AEFC, announcing Gregg would be placed on administrative leave. The memorandum was printed on AEFC letterhead, which listed logos for AEI, FASI, and AEWM at the bottom of the page. Exhibit E was a 2009 letter from FASI's human resources manager that verified that Gregg was president and CEO of FASI in 2007 and worked for AEWM in 2008. Exhibit F was a transcript from a separate arbitration involving FASI, FINRA No. 12-03374, in which FASI's chief operations officer Diane O'Neal testified that FASI did due diligence on AEI products in 2007 or 2008.

[6] Exhibit G was an AEFC advertising brochure sent by Slater to plaintiffs that mentioned FASI and AEI as part of the "Advanced Equities Family of Companies." Exhibit H was a return envelope sent by Slater to plaintiffs for plaintiffs to return AEI's privacy policies. The envelope was addressed to "[FASI], attention: AEI Compliance."

plaintiffs, filed a declaration identifying an AEFC document she pulled from the Internet (Exhibit I).[7]

Plaintiffs argued the return envelope (Exhibit H) and language referring to AEI and FASI as part of "the Advanced Equities Companies" (Exhibits D and G) showed that AEI and FASI were actually a single unit. They pointed to AEFC memoranda concerning employee transitions as evidence employees moved between AEI and FASI (Exhibits B, C, and E). They argued the deposition of FASI's chief operating officer (Exhibit F) demonstrated that FASI vetted AEI products. Plaintiffs argued that as president of AEFC, Antoniades communicated with plaintiffs by approving brochures and information sent to investors (Exhibit G), sending memoranda to staff (Exhibit C), and exercising managerial control and supervisory authority over AEI brokers. Yet, plaintiffs provided no evidence to rebut defendants' proffer that they had no role in developing sales materials for AEI products.

Defendants filed their reply in support of their motion on December 5, 2014. Their brief noted that although Shermoen had been deposed on November 13, 2014, plaintiffs did not offer his testimony in response to the summary judgment motion. Defendants argued the deposition confirmed that: Shermoen made all his investments through his AEI broker, Slater, and never met with anyone at FASI; Slater never represented he was affiliated with FASI; Slater never mentioned Antoniades; plaintiffs

_____

7      Exhibit I was AEFC's Spring 2010 Newsletter in which AEFC CEO Dwight Badger congratulated staff for milestones reached by Motricity, Fisker Automotive, and Bloom; Badger stated these milestones would "serve as the catalyst for growth throughout all our business units."

10

never heard of Antoniades until after making the investments; and plaintiffs knew their investments were risky. Defendants argued only one of plaintiffs' exhibits (Exhibit G) was properly authenticated and that even if AEI and FASI shared a parent in 2008, that fact was immaterial to investments plaintiffs made with Slater in 2010. Defendants reiterated that FASI and AEI had always been completely independent broker-dealers and that plaintiffs' claims, if any, were against AEI entities alone.

D. *Trial Court's Ruling and Judgment*

The trial court heard argument on defendants' motion in December 2014. The court sustained plaintiffs' objections to defendants' request for judicial notice but overruled their objections to defendants' evidence. On its own motion, the court concluded that with the exception of Exhibit G, authenticated by Shermoen's declaration, plaintiffs' documentary evidence lacked authentication and foundation.

Turning to the merits, the court granted defendants' motion for summary judgment, finding they had carried their burden whereas plaintiffs had not. The court noted the SAC alleged plaintiffs invested in AEI products through AEI brokers. Defendants proffered competent evidence that: plaintiffs were not customers of FASI or Antoniades; Slater alone solicited plaintiffs, and he worked exclusively for AEI; FASI and Antoniades did not manage or supervise Slater; and FASI and AEI were independent broker-dealers. Even if plaintiffs' evidence were admissible, the court found it did not rebut defendants' proffer. The court determined that the mere fact AEI and FASI shared a parent company in 2008 did not create a causal connection between the parties in connection with plaintiffs' investments made years later.

11

On May 19, 2015, the trial court entered judgment for defendants on plaintiffs' SAC, dismissing each of the causes of action against FASI and Antoniades with prejudice. Plaintiffs appealed.[8]

## DISCUSSION

### I. *Legal Principles*

The purpose of summary judgment is to "cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) Summary judgment is properly granted if the record demonstrates there is no triable issue of material fact such that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)[9]

A defendant moving for summary judgment bears the burden of persuasion to show there are no triable issues of material fact. (*Aguilar, supra*, 25 Cal.4th at p. 850.) To meet that burden, a defendant need only show the plaintiff cannot establish an

---

[8] In February 2015, plaintiffs filed a premature notice of appeal from the court's December 2014 order granting defendants' motion for summary judgment and directing defendants to prepare a judgment of dismissal. An order granting a motion for summary judgment is not an appealable order or judgment. (*Stolz v. Wong Communications LP* (1994) 25 Cal.App.4th 1811, 1816.) Instead, the appeal must be taken from a judgment entered on the basis of the summary judgment order. (Code Civ. Proc., §§ 904.1, subd. (a)(1), 437c, subd. (m)(1).) However, in the interests of justice, we construe plaintiffs' appeal as having been taken from the entry of judgment, rather than from the order granting defendants' motion. (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 924, fn. 7; *Schettler v. County of Santa Clara* (1977) 74 Cal.App.3d 990, 995, fn. 1; *Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 761, fn. 7.)

[9] Further statutory references are to the Code of Civil Procedure unless otherwise specified.

12

essential element of a cause of action. (*Id.* at pp. 853-854; § 437c, subd. (p)(2).) Once the defendant has met that burden, the burden shifts to the plaintiff to show a triable issue of one or more material facts exists as to that cause of action. (§ 437c, subd. (p)(2); *Aguilar,* at p. 849.) A plaintiff "shall not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . ." (§ 437c, subd. (p)(2); *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477 (*Merrill*).)

In ruling on the motion, the trial court must view the evidence and all inferences reasonably drawn therefrom in the light most favorable to the party opposing summary judgment. (*Aguilar, supra*, 25 Cal.4th at p. 843.) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850.)

On appeal, we review the trial court's decision to grant summary judgment de novo, "considering all of the evidence the parties offered in connection with the motion (except that which the trial court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill, supra*, 26 Cal.4th at p. 476; see *Wachovia Bank v. Lifetime Industries, Inc.* (2006) 145 Cal.App.4th 1039, 1048.) A trial court's stated reasons for granting summary judgment do not bind us; we review the court's ruling, not its rationale. (*Continental Ins. Co. v. Columbus Line, Inc.* (2003) 107 Cal.App.4th 1190, 1196.) We review the trial court's evidentiary rulings for abuse of

discretion.  (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694 (*Carnes*); *Park v. First American Title Co.* (2011) 201 Cal.App.4th 1418, 1427 (*Park*).)

## II.  *Defendants Met Their Burden*

Plaintiffs claim defendants did not meet their burden on summary judgment because the evidence they proffered was inadmissible and insufficient to show the lack of a triable issue.  Plaintiffs' contention lacks merit.  As the trial court found, defendants offered competent evidence to establish the lack of a triable issue of material fact as to any of the causes of action asserted against them in the SAC.

### A.  *No Error in Admitting Defendants' Evidence*

As the party moving for summary judgment, defendants bore the initial burden to make a prima facie showing of the nonexistence of a triable issue of material fact. (*Aguilar, supra*, 25 Cal.4th at p. 850.)  Plaintiffs argue the trial court erred in admitting Antoniades's declaration and excerpted deposition transcript because the declaration was not based on personal knowledge and the deposition was not signed by the certified shorthand reporter.  We find no error.

Declarations offered in support of a summary judgment motion "shall be made by a person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations."  (§ 437c, subd. (d).)  Plaintiffs cite to *Bowden v. Robinson* (1977) 67 Cal.App.3d 705, in which the court determined a declaration that used the phrase "to the best of my knowledge" was inadmissible.  (*Id.* at pp. 719-720.)  The court explained that the phrase, " 'To the best of my knowledge' indicates something less than the 'personal

14

knowledge' required under . . . section 437c, and implies that the declarant's statement is based on something similar to information and belief." (*Ibid.*) Subsequent cases have clarified that the key inquiry is whether the phrase introduces an impermissible element of uncertainty to the statements made in the declaration. For example, in *Katelaris v. County of Orange* (2001) 92 Cal.App.4th 1211 (*Katelaris*), the court explained that the phrase "to the best of my knowledge" did not "somehow magically nullif[y] whatever statement follows it." (*Id.* at p. 1216.) Instead, the phrase *may* introduce an element of uncertainty that, under some circumstances, could render the declaration inadmissible under section 437c. (*Ibid.*) Likewise, in *Pelayo v. J.J. Lee Management Co., Inc.* (2009) 174 Cal.App.4th 484 (*Pelayo*), the court concluded that the declarant's use of the phrase "to the best of my knowledge" did not suggest the information was not based on personal knowledge. (*Id.* at p. 494.) Instead, the phrase "at most raised an issue about the clarity and certitude of [the declarant's] memory, . . . not its admissibility." (*Ibid.*)

Hence, the key inquiry is whether Antoniades's use of the phrase, "To my knowledge" to preface some of the factual assertions in his declaration introduced an impermissible level of uncertainty. (*Katelaris, supra*, 92 Cal.App.4th at p. 1216; *Pelayo, supra*, 174 Cal.App.4th at p. 494.) We conclude it did not. Antoniades declared he had personal knowledge of the facts he asserted and signed under penalty of perjury that the facts set forth were true and correct. As in *Pelayo*, the declaration asserted facts that were within the scope of Antoniades's personal knowledge, including his communications with plaintiffs, his communications with and oversight of Slater, and the corporate structure of AEI and FASI, which were both subsidiaries of AEFC. (*Pelayo,*

15

*supra*, at p. 494.)  Indeed, statements prefaced with, "To my knowledge" were substantively similar to statements that were not so qualified.  For example, Antoniades declared, "I have never made any false or misleading statements to any of the Plaintiffs in this action, nor their broker about their investments, [Slater], because I never communicated with any of them about Plaintiffs' investment decisions."   Given this unqualified statement, other statements that Antoniades did not, to his knowledge, speak to plaintiffs or Slater by phone or e-mail, are not impermissibly uncertain.

As to the deposition transcript, any writing must be authenticated before it may be received into evidence.  (Evid. Code, § 1401, subd. (a).)  Antoniades authenticated the transcript excerpt by declaring under penalty of perjury in his declaration that it was a true and correct copy of his September 2014 deposition in this case.  Contrary to plaintiffs' contention, the lack of a signed certification by the shorthand reporter does not render the transcript excerpt inadmissible.  (See *Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 523 ["[D]eposition excerpts were attached to the moving papers and were authenticated by the attorneys who took the depositions.  That is an acceptable means of authentication.  [Citation.]  The deposition excerpts also included the court reporter's signed certification page—an *alternative method* of authentication."], italics added.)

Plaintiffs' authorities do not suggest otherwise.  In *Voorheis v. Hawthorne-Michaels Co.* (1957) 151 Cal.App.2d 688, it was error to read a deposition transcript at trial *because* the since-deceased deponent had never read or signed it so as to ensure the writing represented "precisely the statements for which the witness stands responsible."

(*Id.* at pp. 690, 692-693.) In *Pavone v. Citicorp Credit Services, Inc.* (S.D.Cal. 1997) 60 F.Supp.2d 1040, a declaration could not authenticate a transcript where it equivocated as to whether the transcript accurately reflected statements made at the deposition. (*Id.* at p. 1045.) Here, by contrast, Antoniades unequivocally authenticated the transcript as a true and correct copy of his deposition in his declaration.

For the first time on appeal, plaintiffs argue Antoniades's deposition excerpt did not comport with rule 3.1116 of the California Rules of Court, which governs the use of deposition testimony as exhibits to motions. While defendants did not highlight relevant portions of Antoniades's testimony, as required by the rule (Cal. Rules of Court, rule 3.1116(c)), plaintiffs waived their objection by failing to raise it below. (*Superior Dispatch, Inc. v. Insurance Corp. of New York* (2010) 181 Cal.App.4th 175, 192-193; § 437c, subd. (b)(5).)

Thus, the trial court did not err in overruling plaintiffs' evidentiary objections to Antoniades's declaration or deposition transcript.

B. *Defendants Carried Their Burden on Summary Judgment*

As the party moving for summary judgment, defendants bore the burden to show there was no triable issue of material fact. (*Aguilar, supra*, 25 Cal.4th at p. 850.) We conclude defendants carried their burden.

The thrust of the SAC is that plaintiffs invested in AEI's products believing the underlying start-up companies (Fisker Automotive, Bloom Energy, Serious Energy, Motricity) were vetted, sufficiently safe for a retirement account, and protected by liquidation preference and antidilution provisions when, in actuality, the underlying

17

securities were risky.  The claims against *these* defendants, FASI and Antoniades, are premised on allegations that AEI and FASI were in effect the same company; FASI vetted AEI products; and Antoniades supervised and made misrepresentations to AEI brokers, including Slater, through trainings and sales materials.  As we explain, defendants proffered competent evidence they made no statements to plaintiffs, through Slater or otherwise, and that FASI and AEI were, at all relevant times, completely independent broker-dealers.  This was sufficient to carry their burden to show that plaintiffs could not establish at least one element of each of their causes of action against FASI and Antoniades.[10]

---

[10]     On appeal, defendants cite to documents attached to their request for judicial notice, which the trial court denied.  Because defendants did not appeal the denial of their request for judicial notice or renew their request for judicial notice with us, we do not consider these documents on review.  (*Hensel Phelps Construction Co. v. San Diego Unified Port Dist.* (2011) 197 Cal.App.4th 1020, 1028, fn. 9.)  We likewise reject defendants' contention that allegations in plaintiffs' original complaint are judicial admissions.  While allegations in a prior *verified* complaint may be considered judicial admissions (*Knoell v. Petrovich* (1999) 76 Cal.App.4th 164, 168-169), as a general rule, an amended complaint supersedes the original (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 884).

1. *Claims Based on Alleged Misrepresentations or Omissions*

Claims of intentional misrepresentations and omissions, fraud and deceit, and negligent misrepresentation all require a misrepresentation or omission. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173; *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 196.) Defendants showed the lack of a triable issue on this essential element.

The SAC alleged FASI and Antoniades made material misstatements or omissions about the investment vehicles (AEI Clean Tech Ventures II, LLC and AEI Wireless II, LLC) and the targeted start-up companies (Fisker Automotive, Bloom Energy, Serious Energy, Motricity), which were then conveyed to plaintiffs through the marketing and training materials sent to AEI and FASI brokers, including Slater. In particular, plaintiffs alleged brokers told investors AEI products had been vetted by FASI and were safe, even for retirement accounts.

Defendants offered competent evidence showing they made no direct statements to plaintiffs or Slater. Antoniades declared he never met plaintiffs, never communicated with plaintiffs, never communicated with or supervised Slater, never trained Slater, and never told Slater what to say to plaintiffs about their investments. Antoniades declared he never conducted seminars to instruct or train brokers to sell AEI products, never demanded sales or sales efforts of AEI products, and never had anything to do with the development or preparation of marketing materials for AEI products. He stated he never made any determination about the suitability of plaintiffs' investments. Antoniades likewise declared FASI employees never developed marketing materials for AEI's

19

products and that he was never aware of any false statements being made through AEI by FASI brokers.

The only specific representation plaintiffs attributed to these defendants was a statement Antoniades allegedly made at a 2007 training seminar for AEI and FASI brokers. Aside from admissible evidence in Antoniades's declaration that he never conducted such training seminars, it is well settled that forward-looking statements do not provide a basis for claims of misrepresentations or omissions, fraud and deceit, or negligent misrepresentation. (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1469-1470 ["The law is well established that actionable misrepresentations must pertain to past or existing material facts. [¶] . . . [¶] Any future market forecast must be regarded not as fact but as prediction or speculation."].)

Defendants also offered competent evidence that FASI and Antoniades did not make any *indirect* misrepresentations or omissions by virtue of the corporate relationship between AEI and FASI. Antoniades declared he was the president of AEFC and CEO of FASI at the time plaintiffs made their investments. Slater was a broker for AEI; he had never been registered as a broker for FASI. Antoniades never had supervisory authority over Slater. He never managed or controlled AEI, the brokerage firm Slater worked for; never acted as "constructive" president or CEO of AEI; never had a job description that included management of AEI; had no oversight or involvement in AEI's investment banking arm, which created the investment vehicles; and never did due diligence for AEI.

Antoniades's declaration established that AEI had always been a completely separate broker-dealer from FASI under FINRA and SEC rules and regulations. AEI had

20

its own leadership team, employee structure, supervisors, capital, policies and procedures, real estate holdings, compliance department, chief compliance officer, advertising department, accounting department, and bank accounts. It had a separate corporate office in Chicago. FASI had its own supervisors and compliance officers, infrastructure, policies and procedures, capital, audit number, accounting department, accounting procedures, and bank accounts. FASI never did due diligence for AEI, and any business dealings between FASI and AEI would have been conducted "at arm's length on commercially reasonable terms." Likewise, Antoniades testified at deposition that: FASI maintained its separate corporate office in San Diego; he was an officer of AEFC and FASI; FASI and AEI were completely independent broker-dealers; and FASI never did due diligence for AEI.[11]

The SAC acknowledged FASI was not AEI's corporate parent. Yet, plaintiffs did not sue the parent, AEFC. Absent any direct or indirect misrepresentations, liability against FASI and Antoniades is premised on the theory AEI and FASI failed to adhere to corporate formalities such that Antoniades served as the "constructive" president of AEI.

"Generally, alter ego liability is reserved for the parent-subsidiary relationship. However, under the single-enterprise rule, liability can be found between sister companies." (*Las Palmas Associates v. Las Palmas Center Associates* (1991) 235

---

[11] Plaintiffs argue Antoniades's assertion that FASI never did due diligence for AEI is contradicted by his deposition testimony. To the contrary, Antoniades's testimony that FASI did due diligence on products it distributed, including AEI products sold to FASI clients, in no way contradicted assertions in his declaration and deposition that FASI never did due diligence *for* AEI.

Cal.App.3d 1220, 1249 (*Las Palmas*); *Hasso v. Hapke* (2014) 227 Cal.App.4th 107, 155 (*Hasso*).) This theory requires proof that the sister companies, despite their separate personalities, formed a single enterprise. (*Las Palmas,* at pp. 1249-1250; *Hasso,* at p. 155.) In *Las Palmas*, the court affirmed a judgment entered against sister companies under an alter ego theory, where the two companies "formed a single enterprise for the purpose of committing a continuing fraud against buyers." (*Las Palmas, supra*, at pp. 1250-1251 [noting that one company had guaranteed the other's loans and that the companies shared directors and staff]; see *Pan Pacific Sash & Door Co. v. Greendale Park, Inc.* (1958) 166 Cal.App.2d 652, 658-659 [affirming judgment against sister corporations under alter ego theory where "each corporation was but an instrumentality or conduit of the other in the prosecution of a single venture"].)

Here, defendants presented competent evidence that AEI and FASI were independent broker-dealers that maintained separate corporate offices, leadership teams, policies and procedures, compliance officers, bank accounts, and audit numbers and would enter any business dealings at arm's length. Consequently, defendants carried their burden to show there is no triable issue as to liability for misrepresentations or omissions under an alter ego theory. (*Hasso, supra*, 227 Cal.App.4th at pp. 156-157 [no alter ego liability where there was no unity of interest between separate companies; companies maintained separate bank accounts and legal formalities and did not commingle assets].)

Thus, defendants met their burden to show the lack of a triable issue on the misrepresentation claims. Defendants' evidence showed they made no statements whatsoever to plaintiffs or Slater (including through marketing or training materials),

22

much less material misrepresentations or omissions regarding the *specific* investments plaintiffs made. Defendants' evidence also established AEI and FASI were completely separate companies, such that FASI and its CEO would not be responsible for any misrepresentations or omissions by AEI or its brokers.

2. *Claims Based on Defendants' Alleged Relationship with Plaintiffs or AEI*

Defendants likewise met their burden as to the remaining causes of action. Fiduciary breach and constructive fraud require a fiduciary or special relationship. (*Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 29; *City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 386 (*Genentech*); *Peterson Development Co. v. Torrey Pines Bank* (1991) 233 Cal.App.3d 103, 117.) As plaintiffs' broker, Slater had a fiduciary relationship with plaintiffs (*Brown v. Wells Fargo Bank, N.A.* (2008) 168 Cal.App.4th 938, 961), as did his employer, AEI (*id.* at p. 961, fn. 13). FASI and Antoniades, however, did not. Plaintiffs argue defendants' evidence did not negate a fiduciary relationship. To the contrary, evidence showing that AEI and FASI were completely separate entities; Slater worked for AEI, not FASI; and Antoniades never had supervisory control over AEI brokers does precisely that. (*Genentech, supra*, at p. 386.) Such evidence likewise negates the contention that defendants owed plaintiffs a fiduciary duty by virtue of an alter ego theory. (*Las Palmas, supra*, 235 Cal.App.3d at pp. 1249-1250; *Hasso, supra*, 227 Cal.App.4th at pp. 156-157.)

Similarly, a claim for failure to supervise presupposes a duty to use due care. (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397; *Software Design & Application,*

23

*Ltd. v. Hoefer & Arnett, Inc.* (1996) 49 Cal.App.4th 472, 478.)[12] Defendants' evidence that Antoniades lacked a supervisory relationship over Slater or managerial control over AEI negated that element.

Control person liability under section 25504 of the Corporations Code "requires some sort of control person, employee, or agency relationship with the primary [securities law] violator"—here, AEI. (*AREI II Cases, supra*, 216 Cal.App.4th at p. 1013.) Control is " 'the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a corporation.' " (*Hellum v. Breyer* (2011) 194 Cal.App.4th 1300, 1316.) Likewise to find an agency relationship between two distinct companies, one company must exercise a degree of control that reflects its "purposeful disregard of the [other's] independent corporate existence." (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 542.) Defendants' evidence that FASI and AEI at all times operated as completely independent sister companies negated the essential element of control.

Finally, section 25504.1 of the Corporations Code requires proof that FASI "materially assisted *in* the [underlying] securities law violation" of AEI. (*AREI II Cases,*

---

12     Plaintiffs cite an administrative regulation to suggest broker-dealers have a duty to supervise their agents. (10 Cal. Code Regs., § 260.218.4, subd. (a) ["Every broker-dealer shall exercise diligent supervision over the securities activities of all of its agents."].) That regulation does not impose a statutory duty to supervise. (*Asplund v. Selected Investments in Financial Equities, Inc.* (2000) 86 Cal.App.4th 26, 38; see *California Service Station Assn. etc. v. American Home Assurance Co.* (1998) 62 Cal.App.4th 1166, 1175 ["[T]he courts and the Legislature may create a negligence duty of care, but an administrative agency cannot independently impose a duty of care if that authority has not been properly delegated to the agency by the Legislature."].) To the extent the SAC asserts a claim for failure to supervise, it rests on common law negligence.

*supra*, 216 Cal.App.4th at p. 1014.) "[I]t is not enough that a person provided material assistance in a larger scheme to defraud if that person had no role or involvement in the part of the scheme that constituted a violation of the securities laws." (*Ibid.*) Thus, a plaintiff must show that a person materially aided in not just the transaction, but in the securities violation itself. (*Id.* at p. 1016.) Defendants' evidence that AEI and FASI were completely independent and that plaintiffs bought their securities through AEI alone negated any connection between FASI and securities violations by AEI brokers.

In short, as with the misrepresentation claims, defendants carried their burden to show that plaintiffs' remaining claims for fiduciary breach, constructive fraud, failure to supervise, control person liability (Corp. Code, § 25504), and aiding and abetting liability (Corp. Code, § 25504.1) each lacked a triable issue as to an essential element. (*Aguilar, supra*, 25 Cal.4th at p. 850.)

### IV. *Plaintiffs Failed to Meet Their Burden*

Because defendants carried their burden, the burden shifted to plaintiffs to show the existence of a triable issue of material fact. (§ 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at p. 850.) We conclude plaintiffs failed to meet their burden.

### A. *Any Error in Excluding Plaintiffs' Evidence Was Harmless*

Plaintiffs argue the trial court erred when it excluded all but one of plaintiffs' exhibits for lack of authentication and foundation. They contend their evidence was authenticated by declarations from their attorneys and Shermoen. We conclude any error was harmless.

Exhibits A through E consisted of documents produced in a 2008 arbitration between Gregg and FASI.[13] Plaintiffs did not properly authenticate these documents, as they did not submit evidence linking these documents to a discovery production by FASI in the 2008 FINRA case.[14] Exhibit F purports to be an excerpt from a separate 2012 arbitration between Martina Hutchinson, FASI, and third-party respondent Michael DiPietro. Plaintiffs did not submit evidence laying a proper foundation for Exhibit F; the Mirch Declaration merely states the transcript was among the documents received from FASI's counsel in the *2008* arbitration.[15] Thus, the trial court did not err in excluding Exhibits A through F. (*Carnes, supra*, 126 Cal.App.4th at p. 694; *Park, supra*, 201 Cal.App.4th at p. 1427.)

Likewise, the trial court properly excluded Exhibit I, which was a copy of an AEFC staff newsletter obtained from the Internet. A declaration of Erin Hanson,

---

[13] See *ante*, footnotes 5 through 7, for a description of plaintiffs' exhibits.

[14] The Mirch Declaration purports to attach "correspondence accompanying discovery production from First Allied's counsel in the FINRA matter." However, based on the record before us, it does not appear that plaintiffs submitted this correspondence as an exhibit before the trial court.

[15] Exhibit F also appears inadmissible under the hearsay rule, as plaintiffs did not establish admissibility under the former testimony exception. Plaintiffs did not proffer evidence O'Neal was unavailable to testify, either through another deposition or by declaration. Plaintiffs also did not show the parties in the 2012 arbitration had the same interest and motive to cross-examine O'Neal as defendants would have in this case (Evid. Code, §§ 1291, subd. (a)(2), 1292, subd. (a)), or that FASI offered O'Neal's testimony in its own behalf at the 2012 arbitration (Evid. Code, § 1291, subd. (a)(1)). (See *Gatton v. A.P. Green Services, Inc.* (1998) 64 Cal.App.4th 688, 693 [no error in excluding deposition testimony from another case offered in opposition to summary judgment motion]; *Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1150 [same].)

plaintiffs' counsel, detailed the steps she used to pull this document from the Internet. This was insufficient to lay a proper foundation as to the authenticity of the AEFC newsletter. (*People v. Goldsmith* (2014) 59 Cal.4th 258, 267 ["The foundation requires that there be sufficient evidence for a trier of fact to find that the writing is what it purports to be, i.e., that it is genuine for the purpose offered."].)

Finally, the trial court excluded Exhibit H, which was a copy of a return envelope addressed to "[FASI], attention: AEI Compliance." Shermoen authenticated this envelope in his declaration, stating it was a true and correct copy of the return envelope he received from Slater along with AEI's privacy policies. The trial court's evidentiary ruling excluding Exhibit H was erroneous, as plaintiffs laid a proper foundation as to that exhibit. Nevertheless, any error was harmless. (*Park, supra*, 201 Cal.App.4th at p. 1427 [applying harmless error standard].) Indeed, as discussed below, even if *all* of plaintiffs' exhibits were considered, they would not raise a triable issue as to any of plaintiffs' claims against these defendants.

B. *Plaintiffs Did Not Meet Their Burden on Summary Judgment*

Even if all of their exhibits were admissible, plaintiffs did not meet their burden to show a triable issue as to any of the causes of action against these defendants. Plaintiffs did not offer any evidence to rebut defendants' proffer that Antoniades never made any statements to plaintiffs or Slater, or any statements regarding the suitability of plaintiffs' investments. They offered no evidence to overcome defendants' evidence that FASI and AEI operated as independent broker-dealers and that neither FASI nor Antoniades prepared sales materials for AEI products. Plaintiffs argued AEFC marketing materials

27

and internal memoranda describing AEI and FASI as part of the same family of companies indicated that FASI and AEI were a single entity. To the contrary, such evidence at most suggested that AEI and FASI were part of the same corporate family, not that FASI was an alter ego of AEI or otherwise controlled AEI.

*BBA Aviation PLC v. Superior Court* (2010) 190 Cal.App.4th 421 is instructive. In *BBA Aviation*, an individual sued his former employer and the employer's English parent company for wrongful termination. He argued his former employer was an agent of the parent company, so as to permit the court to exercise jurisdiction. In support, he pointed to the fact the parent company's "name and logo appeared on [its subsidiary's] signage, employee uniforms, badges, business cards, and employment documents." (*Id.* at p. 434.) The court rejected the theory that "the mere appearance of a parent's logo on its subsidiary's documents constitutes pervasive control over day-to-day operations" and concluded such branding was "insufficient to prove the existence of a single entity." (*Ibid.*; see *Salkin v. United Services Auto. Assn.* (C.D.Cal. 2011) 767 F.Supp.2d 1062, 1066 ["The presence of USAA's logo on documents and correspondence from USAA Life does not demonstrate sufficiently that the two companies are one entity."].) Thus, the mere fact AEI and FASI were both mentioned in AEFC internal memoranda and marketing materials is insufficient to prove that AEI and FASI formed a single entity.[16]

---

16    Likewise, AEFC memoranda regarding Gregg's transition from FASI to AEWM in 2008 (Exhibits B, C, and E) did not overcome defendants' evidence that FASI and AEI operated as completely independent broker-dealers, observing all corporate formalities.

28

Plaintiffs also offered no evidence to overcome defendants' showing that FASI and Antoniades had no role in vetting AEI's products or supervising AEI brokers. The SAC alleged AEI brokers told investors that AEI products were vetted by FASI. At most, plaintiffs' Exhibit F suggested that in 2007 or 2008, FASI performed due diligence on AEI products. Not only was this consistent with defendants' evidence that FASI could do due diligence on AEI products *that FASI brokers sold to FASI clients*, it did not show a triable issue. Even supposing FASI did due diligence for AEI in 2007 or 2008, plaintiffs offered no causal connection between these acts and their investments *in 2010*. Indeed, even supposing FASI did due diligence for AEI in 2010, there was no causal connection to plaintiffs' *specific investments*.

Rather than offer evidence to overcome defendants' proffer, plaintiffs reiterated the factual allegations in the SAC to argue a triable issue existed. For example, in response to defendants' evidence that Antoniades never participated in trainings for AEI brokers, plaintiffs asserted, without support, that he in fact "spoke at conferences in which AEI employees such as Mr. Slater attended." Once the burden shifted to plaintiffs, however, they could not "rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exist[ed]." (§ 437c, subd. (p)(2).)

In sum, plaintiffs failed to defeat defendants' evidentiary showing that FASI and AEI were, at all relevant times, independent broker-dealers; that FASI and its CEO had no role in vetting plaintiffs' investments; and that FASI's CEO made no statements to plaintiffs or their AEI broker. As defendants argue, plaintiffs' claims lie, if at all, against

AEI entities.  The trial court properly granted defendants' motion and entered judgment in favor of FASI and Antoniades on plaintiffs' SAC.

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to their costs on appeal.

HALLER, J.

WE CONCUR:

BENKE, Acting P. J.

NARES, J.