Filed 5/20/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HENRY JONG,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., et al.,<br><br>        Defendants and Respondents. | A138725<br><br>Alameda County<br>Super. Ct. No. RG12613328) |

Plaintiff Henry Jong appeals from a summary judgment entered against him in his action for unpaid overtime for alleged "off-the-clock" work as an hourly "Outpatient Pharmacy Manager" (OPM) for Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively, Kaiser). He contends the trial court erroneously held his proffered evidence insufficient to create a triable issue as to whether Kaiser had actual or constructive knowledge that he was working hours in addition to those that he reported. We shall affirm the trial court's judgment.

**Background**

Jong and two other former OPMs brought a putative class action against Kaiser alleging numerous wage and hour violations, including, as relevant to this appeal, a cause of action for the alleged failure to pay overtime compensation for hours worked off the clock. Jong and each of the other two plaintiffs were employed by Kaiser as OPMs at different Kaiser pharmacies in California. On various dates between January 2005 and October 2010, Jong worked as a manager at three different pharmacies. Because the defendants' motion for summary judgment was granted only as to Jong, we focus primarily on the facts pertinent to his employment and to the motion against him.

1

Prior to November 2009, Jong and all outpatient pharmacy managers were classified as salaried employees, exempt from various wage and hour requirements. As a consequence of the settlement of a class action alleging that these employees had been misclassified and denied benefits to which they were entitled (*Lopez v. Kaiser Foundation Health Plan, Inc.* (Super. Ct. Alameda County, No. RG 07-305405)), these employees were reclassified as non-exempt hourly employees entitled to overtime premium compensation. Plaintiffs' complaint alleges that at the same time, Kaiser "instituted a policy that forbade the payment of overtime premium to Plaintiffs and the Class, while simultaneously refusing to make any adjustments to the duties and responsibilities of [the] Class." "This is significant," the complaint further alleges, because Kaiser's "own data, including surveys of the Class Members produced in the *Lopez* action, indicated that, before they were re-classified, Class Members were routinely working fifty (50) hours or more per week in order to [meet Kaiser's goals and requirements]. [¶] The net effect of [Kaiser's] policy against the payment of overtime premium along with no depreciation in the nature of their job duties, since being reclassified non-exempt , hourly workers, Plaintiffs and the Class have been, and continue to be, forced to work 'off the clock' so as not to incur overtime premium pay in violation of [Kaiser's] policy while still maintaining compliance with [Kaiser's] lofty expectations."

Following discovery, Kaiser moved for summary judgment on the ground, as to this claim, that Jong lacked evidence that Kaiser "failed to pay overtime wages for hours he worked that Kaiser knew or should have known he worked." In granting the motion, the trial court fairly summarized Kaiser's evidence as follows: "Kaiser's evidentiary support . . . consists in substantial part of excerpts from the Jong transcript deposition. Jong testified that he was aware that it was Kaiser's policy to pay for all hours worked and to pay for all overtime hours employees record, even if an employee should or could have obtained pre-approval before working the overtime but failed to do so. He also testified that he was familiar with the applicable time keeping rules and that he knew how to use the timekeeping system. He also signed a document entitled 'Attestation Form for

Hourly Managers and Supervisors – Working Off-the-Clock Not Allowed' (the 'Attestation'). Jong further testified that he did not know whether anyone in Kaiser management was aware he was performing the off-the-clock work he now claims to have performed before clocking in in the morning, after clocking out at the end of the day, and at home in between his work days. [¶] . . . Jong testified that he was unable to recall the number of off-the-clock hours he worked and kept no written record of those hours."

In opposing the motion for summary judgment, Jong argued as follows: "While Kaiser may instruct its non-exempt employees to accurately report all hours worked, plaintiff was accountable to ensure that the pharmacy stayed within the pharmacy's predetermined budget. Plaintiff's inability to stay within budget by incurring excessive or routine overtime was deemed to be a failure to perform his job duties which could result in discipline including termination. In fact, plaintiff was reprimanded for failing to stay within budget based upon the incurrence of too much overtime. As such regardless of Kaiser's written policy, the circumstances were such [that they] placed plaintiff in the unenviable position of deciding whether to report all hours worked and face discipline for failing to stay within budget or refuse to report all hours so as [to] maintain his accountability for staying within budget and avoid the imposition of discipline. Moreover, Kaiser was aware that OPMs, including plaintiff, were regularly required to work substantially more than 40 hours in a week to complete their job duties which remained the same after OPMs were reclassified to non-exempt." In the Discussion section, *post*, we shall discuss the evidence that Jong proffered to show that Kaiser was aware that he had worked off-the-clock hours that he did not report.

The trial court granted Kaiser's motion as to Jong but denied the motion as to the other two named plaintiffs. The court ruled that much of Jong's evidence was inadmissible and that his evidence failed to show that he—as distinguished from some OPMs in general—was working off the clock. In denying the motion as to the other plaintiffs, the court found in their testimony "weak" evidence of conversations with their supervisors indicating awareness that they were in fact working off-the-clock hours that

3

were not recorded, but Jong proffered no similar evidence of conversations as to his working hours.

Jong has timely appealed from the adverse judgment entered pursuant to the court's ruling on the summary judgment motion, and on appeal challenges only the trial court's ruling with respect to his claim for unpaid overtime compensation.

## Discussion

Jong's cause of action is brought under Labor Code section 1194, which authorizes "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee" to recover the unpaid amount due, plus interest, attorney fees and costs. Although not articulated in the statute, the parties and the trial court assumed the applicability under the Labor Code of certain principles that federal courts have applied in similar cases under the Fair Labor Standards Act (FLSA) (29 U.S.C. § 207(a)). In *Forrester v. Roth's I.G.A. Foodliner, Inc.* (9th Cir. 1981) 646 F.2d 413, the court held that "where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207." (646 F.2d at p. 414.) "An employer must have an opportunity to comply with the provisions of the FLSA. This is not to say that an employer may escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation. However, where the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of § 207(a)." (*Id.* at pp. 414-415; see also, e.g., *Kellar v. Summit Seating, Inc.* (7th Cir. 2011) 664 F.3d 169, 176-178; cf. *Brown v. Scriptpro, LLC* (10th Cir. 2012) 700 F.3d 1222, 1230-1231.) This qualification was implicitly endorsed by our Supreme Court in a different context (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 585 [" ' "[T]he words 'suffer' and 'permit' as used in the statute mean 'with the knowledge of the employer.' " ' "] It has been followed in at least one case in federal court brought under the provisions of the

4

Labor Code. (*White v. Starbucks Corp.* (N.D.Cal. 2007) 497 F.Supp.2d 1080, 1083 ["To prevail on his off-the clock claim, White must prove that Starbucks had actual or constructive knowledge of his alleged off-the-clock work."].) We see no reason to question this basic premise on which all parties have proceeded.

The evidence on which Jong principally relies to establish Kaiser's actual or at least constructive knowledge that he was working more than the hours he reported is the deposition testimony that 18 OPMs gave in the *Lopez* litigation. According to the excerpts from their depositions submitted in opposition to the summary judgment motion, each of the 18 OPMs required more than 40 hours a week to perform their required tasks. The trial court sustained Kaiser's hearsay objection to the consideration of these deposition excerpts. Jong does not dispute that the deposition testimony taken in another case cannot be used to establish the truth of the deponents' testimony. (*Gatton v. A.P. Green Services, Inc.* (1998) 64 Cal.App.4th 688.) He argues that the deposition testimony should have been received not for the truth of the testimony, but to show that Kaiser was put on notice of the claim that more than 40 hours a week is required for the OPMs to fulfill their job responsibilities.

The trial court disagreed "because here the issues as to each plaintiff is whether Kaiser had constructive knowledge of whether *that plaintiff* was working off the clock and the notice issue is specific to that individual in his or her specific pharmacy rather than OPMs in general. Further, plaintiffs are offering the testimony not merely for 'notice' but for the truth of the matter—that is, that the OPM position generally requires work on average of 48 hours or more per week. Use of those depositions to prove Kaiser had constructive knowledge that all OPMs were in fact working 48 hours or more per week is an impermissible hearsay use."

We do not agree with the trial court's second reason for rejecting the evidence. Assuming that the deposition testimony was offered for both a permissible and an impermissible purpose, the latter does not preclude consideration for the permissible purpose. Here, it was not necessary to rely on the depositions for evidence that Jong worked more than 40 hours per week; Jong's testimony was sufficient to create a triable

5

issue of that fact. But to the extent the deposition testimony was offered to prove notice, the excerpts were properly excluded for the first reason given by the trial court, although the objection is more properly characterized as irrelevance rather than hearsay. The depositions in the *Lopez* action may have provided notice that when OPMs were exempt salaried employees, many worked more than 40 hours a week. But that testimony hardly put Kaiser on notice that when their classification was changed and they were directed not to work overtime without prior approval and to report any overtime that they did work, OPMs in general, and Jong in particular, failed to comply with those directives.

The situation in *White v. Starbucks Corp., supra,* 497 F.Supp.2d 1080 was comparable. There, "White does not dispute that he never told anyone at Starbucks about working off-the-clock. White does not dispute that he and others recorded and were paid for overtime work. Rather, White attempts to create a dispute of fact whether Starbucks knew about some unspecified time worked off-the-clock by showing that '[d]efendant knew how much time it took to perform much of the work required by the SMs [store managers].' . . . [¶] White concludes that '[t]his level of intimate knowledge of the SMs activities, in and of itself, would support a reasonable conclusion that the Defendant should have known what its SMs were doing.' " (*Id.* at pp. 1083-1084.) The court indicated that it was "troubled by plaintiff's evidence," but that "[w]hile plaintiff may be able to show a material dispute whether Starbucks had actual or constructive knowledge that *some* store managers sometimes worked off-the-clock, plaintiff has not submitted evidence that Starbucks had actual or constructive knowledge that Steve White worked off-the-clock." (*Id.* at p. 1084.) The court concluded, "White has failed to raise genuine issues of fact. Based on White's 'evidence,' the court finds that no reasonable jury cold conclude that Starbucks knew about White's alleged unpaid time. White's theories for imputing knowledge to Starbucks are pure conjecture. Imputing constructive knowledge would be particularly inappropriate given that White was paid for significant overtime during his brief tenure and admitted that he was never criticized for working overtime." (*Id.* at p. 1085.) While Jong has submitted evidence that he was criticized for working overtime, he proffered no evidence that his supervisors told him he could or should work

6

off the clock or that he advised the supervisors that he would discontinue reporting his overtime hours rather than limiting the time he spent on the job. In all other respects, the facts in the two cases are remarkably similar.

The facts in *Newton v. City of Henderson* (5th Cir. 1995) 47 F.3d 746 are also similar. There, the court wrote, "In light of the fact that [a supervisor] explicitly ordered [a police officer] not to work overtime and in light of the fact that [the officer]admits that he never demanded payment for overtime already worked, it is clear that access to information regarding the Task Force's activities [on which the officer worked], standing alone, is insufficient to support the conclusion that the City should have known that [the officer] was working overtime." (*Id.* at p. 749.) The court concluded: "[The officer] does not deny that the City officially notified him that he could not work additional overtime hours. He does not present evidence that he was unofficially told otherwise. The evidence will not support his contention that the City should have known that the hours reported on his City time sheets were incorrect." (*Id.* at p. 750; see also, e.g., *Forrester v. Roth's I.G.A. Foodliner, Inc., supra,* 646 F.2d at pp. 414-415.)

Here, Jong acknowledged that he "knew of Kaiser's written policy that OPMs should be clocked in whenever they were working," that he was always paid for time he recorded on Kaiser's recording system, including overtime hours, that he was instructed he was eligible to work and be paid for overtime hours, that there was never an occasion when he requested approval to work overtime that was denied and there were occasions when he worked and was paid overtime even though he did not seek pre-approval, that he was not told by any of his managers or supervisors or any other Kaiser management personnel that he should perform work before he clocked in or after he clocked out or otherwise work off-the-clock,[1] and that he signed the attestation form and understood it

---

[1] When asked at his deposition whether anyone in Kaiser management ever became aware that he was performing work prior to clocking in, he responded that he did not know. In his response to Kaiser's assertion that his lack of knowledge was an undisputed material fact supporting the motion for summary judgment, he asserted that "[w]hether plaintiff knows or does not know if Kaiser was aware of his off-the-clock work is

7

was an attestation that he would not work off-the clock. Under these admitted circumstances, evidence that Kaiser was aware that many OPMs worked more than 40 hours a week before being reclassified would not support a finding that after the reclassification Kaiser knew or should have known that Jong was not correctly reporting his hours.

Jong contends that two pieces of evidence he presented, either alone or in combination with the other evidence he proffered, were sufficient to create a triable issue as to Kaiser's constructive knowledge of his unreported overtime hours. He points to a January 2010 email message from a Kaiser executive, stating "I have received reports of potential violations [of the prohibition of working off the clock]." However, the trial court's reasoning for rejecting the sufficiency of this evidence is compelling: "A later email to area pharmacy directors states: 'Ensure that all staff are informed that working off-the-clock is unacceptable . . .' and requires OPMs to execute an attestation that they know working off the clock is a violation of policy and may subject them to discipline. Plaintiff argues that this evidences knowledge of off-the-clock violations; however, it arises in the context of warnings that prohibit the practice and measures to impress that policy upon all non-exempt employees. And it certainly falls short of evidence that Kaiser knew *Jong* was working off the clock at *his* pharmacy—especially where Jong basically admitted that he took steps to prevent Kaiser from discovering that he was working off the clock."

Finally, Jong submitted alarm code data from his pharmacy cross-referenced to his time records, which indicate that he disarmed the alarm prior to the time he reported beginning his work. We again find the trial court's reason for rejecting the sufficiency of this evidence to be persuasive: "[E]ven assuming that the availability of such data could otherwise meet the 'should have known' requirement, as opposed to 'could have known' [citation], the alarm data does not show what Jong was doing during the time between

irrelevant" and repeated his argument that Kaiser was aware that the work of an OPM requires more than 40 hours a week.

8

disarming the alarm and clocking in, or between checking out and arming the alarm." While the summary judgment papers may have contained evidence that Jong was working whenever the alarm was off, that information was not before Kaiser when paying Jong and Kaiser could reasonably believe that he did not begin or end work except as he reported. (See *See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889, 909 ["In moving for summary adjudication, Silva did not produce *any* evidence showing the class members who clocked in during the grace period were working or were under the employer's control. In responding to the motion, See's Candy produced facts showing the employees were *not* working and were engaged in their own personal activities."].)

While cases that Jong cites do stand for the unquestioned proposition that an employer's actual or constructive knowledge of the hours its employees work is an issue of fact, the issue on a summary judgment motion is whether evidence has been presented that would support a finding of such knowledge. In one of the two cases Jong cites there was in fact competent evidence that the employer had knowledge of unreported overtime being worked. (*Reich v. Department of Conservation & Natural Resources* (11th Cir. 1994) 28 F.3d 1076, 1083 ["the Department had actual knowledge through the 1987 AMIP study that unreported overtime during deer hunting season continued to be a substantial problem despite the Department's 1985 written policy prohibiting all such work"].) In the other, *Davis v. Food Lion* (4th Cir. 1986) 792 F.2d 1274, 1277-1278, the Fourth Circuit affirmed a district court finding that the employer food market had no actual or constructive knowledge of a market manager's off-the-clock work, despite the manager's argument that the employer should have known of his off-the-clock work "because of the pressure put on market managers by the unrealistically stringent" (*id.* at p. 1277) scheduling system used by the market.

Here, after reviewing all of the evidence that Jong tendered in opposition to the summary judgment motion, we reach the same conclusion as did the trial court—that none of this evidence, considered independently or collectively, is sufficient to support a finding that Kaiser was aware of his unreported overtime hours. Jong failed to create a

triable issue of a material fact essential to his claim, and Kaiser's motion for summary judgment therefore was properly granted.

## Disposition

The judgment is affirmed.


_____
Pollak, J.


We concur:


_____
McGuiness, P. J.


_____
Siggins, J.

Superior Court of Alameda County, No. RG12613328, Wynne S. Carvill, Judge.

Counsel for Plaintiff and Appellant:        STONEBARGER LAW, APC
Gene J. Stonebarger
Richard D. Lambert
Elaine W. Yan

KEARNEY LITTLEFIELD, LLP
Thomas A. Kearney
Prescott W. Littlefield

Counsel for Defendants and Respondents:    SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
Thomas R. Kaufman
Gregg A. Fisch

A138725