**Faramarz AMIRI, Plaintiff,**

**v.**

**COX COMMUNICATIONS CALIFORNIA, LLC, Defendant.**

**Case No.: SACV 16–00540–CJC(RAOx)**

United States District Court, C.D. California, Southern Division.

Signed 09/27/2017

Douglas N. Silverstein, Geoffrey LeVan Bryan, Kesluk Silverstein and Jacob, PC, Rolando Juvenal Gutierrez, Arias Ozzello & Gignac LLP, Los Angeles, CA, Rod Bidgoli, Irvine Law Group LLP, Santa Ana, CA, for Plaintiff.

Jason Patrick Brown, Paul Berkowitz, Thomas R. Kaufman, Sheppard Mullin Richter and Hapton LLP, Los Angeles, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO STRIKE PAGA REPRESENTATIVE CLAIMS

CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE

Plaintiff Faramarz Amiri ("Plaintiff") brings this wage and hour action against Defendant Cox Communications California, LLC ("Defendant"), alleging eight causes of action arising out of his work as a field employee, including a claim for penalties pursuant to the California Private Attorney General Act ("PAGA"), California Labor Code §§ 2699, et seq. (Dkt. 37 [hereinafter "FAC"] ¶¶ 74–83.) Plaintiff's claims are based primarily on the circumstances under which he took, was allowed, and recorded breaks, including meal breaks, and on the restrictions placed upon him during intermittent weeks on-call. (See id. ¶¶ 14–22.) Before the Court is Defendant's motion to strike Plaintiff's PAGA representative claims. (Dkt. 46 [hereinafter "Mot."].) For the following reasons, the motion is GRANTED. [1]

## II. BACKGROUND

Defendant Cox Communications California, LLC, is a cable, internet, and communications services provider. (FAC ¶ 14.) Defendant operates in three separate geographic markets in California: San Diego, Orange County/Rancho Palos Verdes ("Orange County"), and Santa Barbara. (Mot. at 4.) Each of these geographic areas has local management who impose different work procedures based on the relevant needs of the geographic area. (Id.) Defendant employs about 1,000 "field employees" to install, maintain, and/or service hardware and software. (FAC ¶ 15; Mot. at 2.) The different types of field employees include, but are not limited to, fiber tech, maintenance, construction, Cox Business, data and engineering, transport, network operation, and other similar functioning departments. (FAC ¶ 15.) Within each type there are two or three levels of employees who may have distinct job duties and responsibilities. (Mot. at 3; Dkt. 45–6 [Declaration of Linda Kavanagh, hereinafter "Kavanagh Decl."] ¶ 8.) The largest category of field employees are several hundred Universal Home Technicians ("UHTs"), who install and repair cable services in customers' homes and businesses. (Kavanagh Decl. ¶ 6.)

Plaintiff worked as a Fiber Tech field employee for Defendant from approximately May 30, 2006, until September 18, 2015, in the Orange County market. (FAC ¶ 7; Mot. at 7.) Fiber Techs are responsible for maintaining Defendant's fiber optic network and performing direct fiber connections to certain businesses. (Mot. at 1, 3; Dkt. 46–5 Ex. B [Deposition of Faramarz Amiri, hereinafter "Amiri Depo."] 39:25–40:11, 40:23–25.) Only 20 other persons have worked as Fiber Techs in California since February 17, 2015, and only nine of those Fiber Techs have worked in Orange County. (Mot. at 7–8; Kavanagh Decl. ¶ 10; Dkt. 46–8 Ex. G.) Plaintiff worked a regular shift five days per week from 7:00 a.m. to 3:30 p.m. with a 30–minute unpaid meal period. (Amiri Depo. 37:16–38:4.) Plaintiff would come into the "office" to obtain his vehicle and clock in, but spent the majority of the work day in

---

1. Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. See Fed. R. Civ. P. 78; Local Rule 7–15. Accordingly, the hearing set for October 2, 2017, at 1:30 p.m. is hereby vacated and off calendar.

the field without any direct supervision. (*Id.* 82:4–25, 95:13–15, 135:22–136:17.)

Plaintiff alleges that he was often unable to take the 30–minute off-duty meal break because (1) if in the middle of a project, he would need 90 minutes to clean up his work area before he could leave the area to go for lunch, (Amiri Depo. 88:6–25) and (2) an increase in orders for fiber optic cable coincided with a decrease in the Orange County Fiber Techs from eight to six Fiber Techs sometime in 2014–2015, (*id.* 111:12–24, 112:20–113:11, 127:14–21). Mr. Ortiz, another Fiber Tech in Orange County, denies having similar experiences during this time period, (Dkt. 46–3 [Declaration of Carlos Ortiz] at 45–48), as do Fiber Techs in other markets, (Dkt. 46–2 [Declaration of Scotty Badong ¶¶ 12–16]; Dkt. 46–4 [Declaration of Eddie Velez ¶¶ 9–12] ). Other field employees also attest they consistently were able to take their meal period unless they chose to skip them, and that their managers encourage them to take these breaks. (Mot. at 9–10 n.41.) Plaintiff concedes that Defendant had written policies that comply with California law that establish the required paid rest period as well as a first and second off-duty meal period. (Mot. at 4–5; Dkt. 46–7 Exs. C, D [Plaintiff's Responses to Requests for Admissions Nos. 3–5].)

Plaintiff also alleges that regardless of the department, all field employees were required to work shifts which exceeded eight hours per day, and/or forty hours per week. (FAC ¶ 16.) Defendant allegedly failed to compensate field employees for all of the overtime and double time compensation to which they were entitled. (*Id.*) Defendant prohibits working off the clock as a matter of policy, (Dkt. 46–5 Ex. 14), and Plaintiff (1) was required to enter time accurately, (2) received training on Defendant's "Wage and Hour Compliance Policy," (3) would electronically certify the ac-

curacy of his time, and (4) was supposed to notify a manager or human resources if anything looked wrong. (Mot. at 5–6; Amiri Depo. 48:6–22, 55:23–56:15, 57:1–18, 57:9–58:11, 61:19–62:20.)

In addition to their regular work schedule, field employees would be required to remain on-call 24 hours per day, seven days at a time ("on-call period") approximately every four to six weeks. (FAC ¶ 17.) Defendant has a generalized on-call policy for California and standardizes on-call compensation, but the policy does not detail all on-call work procedures. (Mot. at 6.) Rather, specific procedures differ between markets and with regard to different jobs within the market. (Amiri Depo. 158:22–159:4; Kavanagh Decl. ¶ 4; Dkt. 46–6 Ex. B–23.) For example, local management decides the rotation schedule for being on-call and what constitutes a reasonable time to report to an on-call assignment. (Ex. B–23.) Some departments require employees to go into the field more often, whereas others, such as UHTs, had no on-call component of their job during Plaintiff's employment. (Amiri Depo. 68:25–69:23, 72:24–75:10; Kavanagh Decl. ¶¶ 4, 6.)

While Plaintiff worked as a Fiber Tech, six to eight Fiber Techs in the Orange County market rotated one-week periods where they would be on call, based on a written schedule Plaintiff's managers would provide six months or more in advance. (Amiri Depo. 159:20–24, 160:1–161:13; Dkt. 46–7 Ex. B–24.) The Fiber Techs in Orange County were permitted to and did trade on-call periods with one another. (*Id.* 160:9–161:13.) Plaintiff averaged between one and two calls per on-call week, although there were some on-call weeks when he did not receive any calls. (Amiri Depo. 163:14–19; Kavanagh Decl. ¶¶ 11–12.) Plaintiff was required to arrive at the field site within 45 minutes after

getting a call. (Amiri Depo. 170:24–171:10, 182:25–183:4.) Other field employees report very different experiences from Plaintiff, ranging from construction planners who rarely go into the field after a call, (Mot. at 11 n. 50), to employees who had more than 45 minutes to respond to a call, and some who had no defined time limit at all, (*id.* at 12 n.51, 52.) Other Fiber Techs, in Orange County and the other markets, report varying deadlines to respond as well as received fewer calls during on-call periods than Plaintiff. (*Id.* at 12–13.) Mr. Ortiz, who worked in Orange County with Plaintiff, only received a call one out of ten weeks he was on call and was told he should respond to a call within 20 minutes, but that there was no deadline for when he got to the field site. (Ortiz Decl. ¶¶ 5, 8–10.)

Plaintiff alleges that in order to respond to company emergencies, Defendant had a policy, practice, and procedure of requiring field employees to stay within the limited geographic area where Defendant operates and to which the field employee was assigned ("contained area") during the on-call period. (*Id.*) As a result of this policy, if a field employee lived outside of the contained area, Defendant allegedly requires the employee to spend the on-call period at a hotel assigned and paid for by Defendant within the contained area. (*Id.*) Field employees are prohibited from leaving the contained area during the on-call period, (*id.*), and allegedly were unable to avail themselves of their statutorily mandated meal or rest periods, (*id.* ¶ 22). Defendant's employee manual also contained restrictions on field employee conduct during the on-call period concerning the forfeiture of premium pay for employees who cannot be contacted, are physically impaired, or who to fail to respond within a reasonable time period. (*Id.* ¶ 21.)

Plaintiff alleges he was constrained during his on-call period because (1) during on-call weeks, Defendant required him to stay at a hotel, at Defendant's expense, closer to the center of the market because Plaintiff lived far from the middle of the territory, (Amiri Depo. 170:19–171:19); (2) different managers had different rules about using company vehicles to travel on personal errands while employees were on call, but Plaintiff never ask for permission to do so, (*id.* 174:12–24, 175:3–7, 182:20–24); (3) because he needed to have access to the company vehicle to respond to calls during the on-call period, he was effectively forced to spend his evenings at the hotel because he could not take the company vehicle on personal errands, (*id.* 171:20–172:14); (4) the frequency of Plaintiff's on-call weeks increased to one every six weeks when the Orange County Fiber Techs decreased from eight to six, (*id.* 36:3–20, 178:8–25); and (5) Fiber Techs in Orange County were required to arrive at a worksite in the field within 45 minutes of getting a call, (*id.* 170:24–171:10, 182:25–183:4).

Plaintiff also alleges that Defendant does not compensate field employees for the entire on-call period that they work, but rather "pays [field employees] for the first eight hours worked at their regular hourly rate" and "[i]f they respond to calls after their first eight hours, they get paid for those hours as well" as a "premium" for on-call waiting time. (*Id.* ¶ 18.) On-call hours are not included in calculating overtime pay. (*Id.* ¶ 20.)

On March 27, 2017, Defendant filed a motion to deny class certification. (Dkt. 26.) The Court denied that motion without prejudice due to Plaintiff's request to order cross examination of the declarants Defendant used in support of its motion. (Dkts. 31, 34.) Plaintiff was given thirty days to depose said declarants, (Dkt. 34),

but did not conduct any depositions, (Mot. at 1, 13). The Court then granted Plaintiff's motion to file a First Amended Complaint to add a PAGA representative claim. (Dkt. 36.) The parties thereafter stipulated to the voluntary dismissal of Plaintiff's class allegations. (Dkt. 41.) The Court then denied Defendant's motion to dismiss Plaintiff's PAGA claim on procedural grounds concerning exhaustion of administrative remedies. (Dkt. 45.) Defendant then filed the present motion to strike Plaintiff's PAGA representative claim because the PAGA claims would be unmanageable to try in light of the predominant individualized inquiries required to decide liability on each claim. (*See generally* Mot.)

Plaintiff brings eight causes of action: (1) Failure to Pay Overtime and Double Time Compensation [Cal. Lab. Code §§ 510, 1194, 1198], (FAC ¶¶ 23–30); (2) Failure to Provide Meal Periods [Cal. Lab. Code §§ 226.7, 512; 8 Cal. Code Regs. § 11040(11) ], (*id.* ¶¶ 31–36); (3) Failure to Provide Rest Periods [Cal. Lab. Code §§ 226.7, 512; 8 Cal. Code Regs. § 11040(11) ], (*id.* ¶¶ 37–43); (4) Failure to Provide Accurate Itemized Wage Statements [Cal. Lab. Code § 226], (*id.* ¶¶ 44–48); (5) Failure to Maintain Accurate Records [Cal. Lab. Code §§ 226, 1174, 1174.5], (*id.* ¶¶ 49–52); (6) Waiting Time Penalties [Cal. Lab. Code § 203], (*id.* ¶¶ 53–57); (7) Unfair Competition and Unlawful Business Practices [Cal. Bus. & Prof. Code §§ 17200, *et. seq.*], (*id.* ¶¶ 58–73); (8) Penalties Pursuant to Private Attorney General Act ("PAGA") [Cal. Lab. Code §§ 2699, *et. seq.*], (*id.* ¶¶ 74–83). Plaintiff asserts all of his claims under his PAGA representative claim, (*id.* ¶ 77), "individually and on behalf of all aggrieved employees" seeking "wage compensation for uncompensated overtime worked, and missed meal and rest breaks," (*id.* ¶ 79). The alleged "aggrieved employees" include "all current or former employees of Defendant, and on or

more of the alleged violations were committed against them." (*Id.* ¶ 77.)

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(f), the court may strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). However, motions to strike are typically viewed with disfavor because they are often used for purposes of delay, and because of the strong judicial policy favoring resolution on the merits. *RDF Media Ltd. v. Fox Broadcasting Co.*, 372 F.Supp.2d 556, 566 (C.D. Cal. 2005). In reviewing a motion to strike, the court must view the pleadings under attack in the light most favorable to the pleader. *Lazar v. Trans Union LLC*, 195 F.R.D. 665, 669 (C.D. Cal. 2000). "If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.Supp.2d 1048, 1057 (N.D. Cal. 2004).

## IV. DISCUSSION

Defendant argues that the Court, in its discretion, should strike Plaintiff's PAGA representative claim because there is no manageable way to try his claims as a representative action, (Mot. at 14–24), and because Plaintiff has failed to provide a trial plan to demonstrate how the individual issues the PAGA representative claims present can be managed consistent with due process, (*id.* at 24–25). Plaintiff responds that he is entitled to try his claim and that there is no requirement for him

to submit a "trial plan" to demonstrate how the PAGA representative claims will be handled. (Dkt. 48 [Plaintiff's Opposition, hereinafter "Opp."] at 1–3.)

■ Under the California Labor Code Private Attorney General Act ("PAGA"), (Cal. Lab. Code §§ 2689, *et seq.*), an "aggrieved employee" may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations, (Cal. Lab. Code, § 2699(a)). Recovery under PAGA is predicated on Plaintiff first establishing Defendant violated the Labor Code. *Arias v. Superior Court*, 46 Cal.4th 969, 987, 95 Cal.Rptr.3d 588, 209 P.3d 923 (2009). District courts disagree whether PAGA imposes a manageability requirement *per se* on plaintiffs bringing these representative actions. *Tseng v. Nordstrom, Inc.*, No. CV11-8471-CAS(MRWX), 2016 WL 7403288, at *5 (C.D. Cal. Dec. 19, 2016) (collecting cases).

Courts that decline to impose such a requirement do so because PAGA actions will always require some level of individualized assessments, thus imposing such a requirement would be inconsistent with PAGA's purpose to permit representative actions. *See, e.g., Tseng v. Nordstrom, Inc.*, No. CV11-8471-CAS(MRWX), 2016 WL 7403288, at *5 (C.D. Cal. Dec. 19, 2016) (declining to impose a manageability requirement on PAGA claims in light of PAGA's purpose as a law enforcement action to benefit the public); *Zackaria v. Wal–Mart Stores, Inc.*, 142 F.Supp.3d 949, 959 (C.D. Cal. 2015) ("Holding that individualized liability determinations make representative PAGA actions unmanageable, and therefore untenable," would be inconsistent with PAGA's purpose, because it "would impose a barrier on such actions that the state law enforcement agency does not face when it litigates those cases itself."); *Plaisted v. Dress Barn, Inc.*, No.

2:12-CV-01679-ODW, 2012 WL 4356158, at *2 (C.D. Cal. Sept. 20, 2012) ("To hold that a PAGA action could not be maintained because the individual assessments regarding whether a violation had occurred would make the claim unmanageable at trial would obliterate this purpose, as every PAGA action in some way requires *some* individualized assessment regarding whether a Labor Code violation has occurred."); *Nelson v. S. California Gas Co.*, No. B238845, 2013 WL 2358670, at *18 (Cal. Ct. App. May 30, 2013).

■ Courts that impose a manageability requirement do so based on the representative nature of the PAGA action and due process. *See Bowers v. First Student, Inc.*, No. 2:14-cv-8866-ODW EX, 2015 WL 1862914, at *4 (C.D. Cal. Apr. 23, 2015) ("Even if Rule 23 did not apply to PAGA representative claims, such claims can be stricken if they are found to be 'unmanageable.' "); *Raphael v. Tesoro Ref. & Mktg. Co. LLC*, No. 2:15-cv-02862-ODW, 2015 WL 5680310, at *2 (C.D. Cal. Sept. 25, 2015) (same). In such cases, the court considers whether the defendant demonstrated through evidence that numerous individualized determinations would be required to try the plaintiff's PAGA representative claim. *See Amey v. Cinemark USA, Inc.*, No. 13-CV-05669-WHO, 2015 WL 2251504, at *16 (N.D. Cal. May 13, 2015) ("[W]hen the evidence shows, as it does here, that numerous individualized determinations would be necessary to determine whether any class member has been injured by Cinemark's conduct, then allowing a representative action to proceed is inappropriate."); *see also Patel v. Nike Retail Servs., Inc.*, No. 14-cv-04781-RS, 2016 WL 7188011, at *4 (N.D. Cal. Dec. 12, 2016) (finding considerations of manageability appropriate, but concluding that—before discovery to ascertain the exact number of aggrieved employees—de-

fendant had not yet demonstrated that plaintiff's PAGA action would be unmanageable). Thus, some district courts strike PAGA representative claims where establishing liability based on Labor Code violations would be unmanageable due to the individualized assessments required to prove violations based on the plaintiff's allegations and the defendant's evidence of the necessary inquiries.[2] *See Ortiz v. CVS Caremark Corp.*, No. C-12-05859, 2014 WL 1117614, at *4 (N.D. Cal. March, 18, 2014); *Litty v. Merrill Lynch & Co.*, No. CV 14-0425 PA PJWX, 2014 WL 5904904, at *3 (C.D. Cal. Nov. 10, 2014); *Raphael*, 2015 WL 5680310, at *3; *Brown v. Am. Airlines, Inc.*, No. CV 10-8431-AG (PJWX), 2015 WL 6735217, at *4 (C.D. Cal. Oct. 5, 2015).

Defendant has made a strong showing that the alleged Labor Code violations rely on unique characteristics of *Plaintiff's experience* as a Fiber Tech in Orange County, rather than on policies or practices common to "aggrieved employees" across California, in three different markets, in varying jobs, and with varying job duties. Based on this evidence, in combination with the fact that liability determinations will require individualized inquiries to prove Plaintiff's PAGA representative claims, the Court finds it appropriate to strike Plaintiff's PAGA representative claims as unmanageable. Plaintiff has made no attempt to refute the factual allegations Defendant provides to support its argument.[3] The Court finds it unnecessary to determine whether manageability is a prerequisite to all PAGA representative claims. See *Ortiz*, 2014 WL 1117614 at *4 ("the Court finds that the PAGA claim in this case is unmanageable. In reaching this decision, the Court does not conclude that PAGA claims are unmanageable in general, but only that the circumstances of this case make the PAGA claim here unmanageable because a multitude of individualized assessments would be necessary.")

### A. Meal and Rest Period Claims (Claims 2 and 3)

Plaintiff alleges that Defendant failed to provide aggrieved employees with the meal and rest breaks required by statute, Cal. Lab. Code §§ 226.7, 512; 8 Cal. Code Regs. § 11040(11). Sections 512(a) and 226.7(a) require an employer to "provide" employees with meal breaks. The California Supreme Court has interpreted "provide" to require that "an employer must relieve the employee of all duty for the designated period, but need not ensure that the employee does no work." *Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th 1004, 1034, 139 Cal.Rptr.3d 315, 273 P.3d 513 (2012). Similarly, Section 226.7(a) re-

---

2. "The Ninth Circuit has yet to decide whether plaintiffs bringing a PAGA claim in federal court must satisfy the requirements of Rule 23, and the district courts in California are split on the issue." *Raphael v. Tesoro Ref. & Mktg. Co. LLC*, No. 2:15-CV-02862-ODW, 2015 WL 5680310, at *2 (C.D. Cal. Sept. 25, 2015) (citing *Ortiz v. CVS Caremark Corp.*, No. C-12-05859, 2014 WL 1117614 (N.D. Cal. March, 18, 2014). However, Defendants do not raise the issue of class certification for Plaintiff's PAGA claims. Thus, the Court finds it unnecessary to address whether Rule 23 applies to the present case.

3. Plaintiff response to Defendant's present motion is little more than complaints that Defendant is again attempting to dismiss Plaintiff's claims and that Defendant's use of *Duran v. U.S. Bank Nat. Assn.*, 59 Cal.4th 1, 325 P.3d 916, 172 Cal.Rptr.3d 371 (2014) is misplaced as *Duran* was not a PAGA case and does not require Plaintiff to submit a trial plan. (Opp. at 1–3.) While Plaintiff is correct to observe there is no "requirement" that he submit a trial plan, the absence of this requirement does not absolve Plaintiff's requirement to respond to Defendant's substantive arguments about the manageability of Plaintiff's PAGA representative action.

quires that "the employer make rest periods available" and the employer need not ensure that employees actually take their rest period. *White v. Starbucks Corp.*, 497 F.Supp.2d 1080, 1086 (N.D. Cal. 2007).

Plaintiff concedes that Defendant's written policies on meal and rest breaks comply with California law. Plaintiff's allegations center on his particular circumstances as a Fiber Tech in Orange County. Plaintiff describes how *he* was prevented from taking his meal breaks due to the amount of time it would take him to clean up a project, an increase in work during 2014–2015, and a decrease in the number of Fiber Techs in Orange County during this same period. Other employees, including Fiber Techs in Orange County and Defendant's other markets, state that they did not experience any pressure to skip meal or rest breaks, but rather took these breaks on a daily basis.

■ While Plaintiff's allegations may demonstrate that *he* was pressured to skip meal and rest breaks, Plaintiff has provided no theory to demonstrate how the group of around 1,000 "aggrieved employees" comprised of various job types, three different geographic markets with different work needs, and many employees who state they had no issue with skipping breaks were all pressured and found themselves unable to take breaks. *See Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 586–87 (C.D. Cal. 2008) (denying class certification where the plaintiff alleged that the defendant's policies "put such pressure on drivers that they cannot take required breaks" because individual issues predominated based on the variety of job classifications, job duties, volume of work, employee experience, and other factors); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 646 (N.D. Cal. 2008) (denying class certification where the plaintiff's theory was that

"stores were too busy to give employees a meaningful opportunity to take breaks" as to prove the claim would require "an individual inquiry into each store, each shift, each employee"); *Mateo v. V.F. Corp.*, No. C 08-05313 CW, 2009 WL 3561539, at *6 (N.D. Cal. Oct. 27, 2009) (denying class certification where the plaintiff's claims were "based on her allegations of an unwritten practice, as opposed to a written policy, and therefore the putative class members would have to prove individual elements in order to show [the defendant's] liability").

Absent a widespread policy or practice of not permitting field employees to have their required meal and rest periods, the Court would be required to determine (1) whether each individual took a particular meal or rest break (2) on a particular occasion and (3) and if the individual skipped the break, why it was skipped for each of the around 1,000 aggrieved employees. Plaintiff's PAGA representative claim based on failure to provide meal and rest periods thus requires numerous individualized determinations that make his claim unmanageable. See *Raphael*, 2015 WL 5680310, at *3 (dismissing PAGA representative claims, including claim for failure to provide meal and rest periods, as "nothing short of unmanageable").

## B. Unpaid Wages Claim (Claim 1) and Derivative Claims (Claims 4–7)

Plaintiff also brings a claim for failure to pay overtime and double time compensation, Cal. Lab. Code §§ 510, 1194, 1198. These claims are based on Defendant's alleged failure to compensate field employees of on-call waiting time and for off-the-clock work. (Mot. at 19–23.) For on-call waiting time, Plaintiff alleges that field employees are not compensated for the entire on-call period that they work, hours

which are also not included in calculating overtime pay. For off-the-clock work, Plaintiff alleges that all field employees were required to work shifts in excess of forty hours per week.

"On-call waiting time may be compensable if it is spent primarily for the benefit of the employer and its business." *Gomez v. Lincare, Inc.*, 173 Cal.App.4th 508, 523, 93 Cal.Rptr.3d 388 (2009), *as modified* (Apr. 28, 2009) (citation omitted). "A determination of whether the on-call waiting time is spent predominantly for the employer's benefit depends on two considerations: (1) the parties' agreement, and (2) the degree to which the employee is free to engage in personal activities." *Id.* (citation omitted). The Ninth Circuit has provided a nonexclusive list of factors, none of which are dispositive, to determine whether the employee was free to engage in personal activities: "(1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time." *Owens v. Local No. 169, Assn. of Western Pulp & Paper Workers*, 971 F.2d 347, 351 (9th Cir. 1992).

Plaintiff points to *his own experience* of being required to stay at a hotel, the frequency of calls he received, and his inability to run personal errands based on his location. Plaintiff also alleges that Defendant's "policy, practice and procedure" of requiring field employees to stay within a limited geographic area while on-call and comply with restrictions regarding their conduct, location, and timing of their response to calls were unduly restrictive and made on-call waiting time compensable. Defendant provides many examples of employees who were not forced to stay at a hotel, who received fewer calls than Plaintiff, and some entire categories of employees who were never on-call. Moreover, Defendant's on-call procedures, such as deadlines to be at the field site, differ between markets and jobs within the market.

Despite this allegation that applies to all aggrieved employees, Plaintiff does not demonstrate how the existence of these generalized, high-level policies will allow the Court to ignore the myriad differences between field employee experiences of on-call periods. Plaintiff's PAGA representative claim would necessarily require the Court to assess the difference between geographic markets, types of employee, specific procedures employees must comply with, frequency of calls, if the employee engaged in personal activities on call, and so on. Plaintiff's allegations about his personal situation do not demonstrate that Defendant had a policy that affected all "aggrieved employees", but rather illustrates that Defendant's treatment of each field employee would depend on a myriad of factors.[4]

---

4. *Defendant points out that Plaintiff's allegations of on-call restrictions for all aggrieved employees are similar to cases where courts have determined on-call time was not compensable. See Gomez, 173 Cal.App.4th at 524, 93 Cal.Rptr.3d 388 ("Lincare did not impose an on-site living requirement, and did not impose excessive geographic restrictions on* plaintiffs. The time limits set for plaintiffs' responses to pages—30 minutes to respond by telephone and two hours to respond to a patient's home—are not unduly restrictive. On-call employees were permitted to trade on-call responsibilities. Plaintiffs were provided pagers by Lincare. Plaintiffs' depositions confirmed they had engaged in some personal*

Plaintiff's overtime claim fails for similar reasons. When the defendant's off-the-clock policy disavows such work, as consistent with state law, the employees clocking out creates a presumption they are doing no work. *Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th 1004, 1051, 139 Cal.Rptr.3d 315, 273 P.3d 513 (2012). The defendant's liability is then "contingent on proof [the defendant] knew or should have known off-the-clock work was occurring." *Id.* (citation omitted); *see Jong v. Kaiser Found. Health Plan, Inc.*, 226 Cal.App.4th 391, 399, 171 Cal.Rptr.3d 874 (2014) (granting the defendant's motion for summary judgment where the plaintiff failed to create a triable issue of material fact essential to his off-the-clock work claim, namely that the defendant was aware of the specific plaintiff's unreported overtime hours). "To prove an off-the-clock claim, a plaintiff must demonstrate that she actually worked off the clock, that she was not compensated for it, and that the employer was aware or should have been aware that she was performing off the clock work." *Ortiz*, 2014 WL 1117614, at *4 (holding that proof of the plaintiff's off-the-clock claim "would be unmanageable, and could not be done with statistical or survey evidence but only with detailed inquires about each employee claimed to have done so and her manager's knowledge thereof"); *see also Raphael*, 2015 WL 5680310 at *2 (granting motion to strike PAGA representative claim, including claim for off-the-clock work).

Defendant prohibits off-the-clock work as a matter of policy, and Plaintiff was trained to comply with this policy. Plaintiff's claim relies on personal anecdotes of such work. Plaintiff provides no evidence that could demonstrate all field employees engaged in such work and their supervisors knew or should have known about it through common proof. Rather, Defendant provides the declarations of other field employees who never worked off-the-clock. On this record, "proof of off-the-clock liability would have had to continue in an employee-by-employee fashion, demonstrating who worked off the clock, how long they worked, and whether [Defendant] knew or should have known of their work." *Brinker Rest. Corp.*, 53 Cal.4th at 1052, 139 Cal.Rptr.3d 315, 273 P.3d 513; *see also Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 642 (N.D. Cal. 2010) ("Plaintiff has provided no evidence of any company-wide or class-wide policy of requiring 'off-the-clock' work, and the individualized assessment necessary to ascertain whether there were in fact any employees who were told to work "off-the-clock" would not be susceptible to common proof.") Thus, Plaintiff's PAGA representative claim for off-the-clock work would be unmanageable, as the Court would need to inquire into each individual field employee's work off the clock and Defendant's knowledge of that specific employee's work.

Plaintiff's remaining claims for failure to provide accurate itemized wage statements (Cal. Lab. Code § 226), failure to maintain accurate records (Cal. Lab. Code §§ 226, 1174, 1174.5), waiting time penalties (Cal. Lab. Code § 203), and unfair competition and unlawful business practices (Cal. Bus. & Prof. Code §§ 17200, *et. seq.*) are derivative of Plaintiff's claims for unpaid wages and meal and rest break violations. Thus, these claims will also be unmanageable to try as PAGA representative claims.

activities while on call; we do not believe plaintiffs' unilateral decisions to avoid personal activities while on call changes the fact that they did engage in some activities and could have continued to do so.")

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to strike Plaintiff's PAGA representative claims is GRANTED. Plaintiff is directed to file a second amended complaint as a separate entry on the docket within SEVEN DAYS.